NICHOLAS ROZANSKY – Bar No. 219855
SUSAN K. SEFLIN - Bar No. 213865
JESSICA L. BAGDANOV - Bar No. 281020
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:  (818) 827-9099
Email:      nrozansky@bg.law
            sseflin@bg.law
            jbagdanov@bg.law

Proposed Attorneys for Chapter 11 Debtor and
Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:19-bk-10762-NB |
| KOI DESIGN LLC, | Chapter 11 |

**DEBTOR'S NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION FOR AUTHORITY TO: (A) USE CASH COLLATERAL ON AN INTERIM BASIS PENDING A FINAL HEARING; (B) GRANT REPLACEMENT LIENS; AND (C) SET FINAL HEARING; MEMORANDUM OF POINTS AND AUTHORITIES [11 U.S.C. § 363 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001]**

*Declaration of Jeremy Husk Filed Concurrently Herewith*

**Hearing:**

Date:     [To Be Set]
Time:     [To Be Set]
Place:    Courtroom 1545
          255 E. Temple Street
          Los Angeles, CA 90012

# TABLE OF CONTENTS

Page

I.    FACTUAL BACKGROUND ..................................................................................4

    A.    General Case Background .......................................................................4

    B.    Description of the Debtor's Business .....................................................4

    C.    The Debtor's Management Structure ......................................................4

    D.    The Debtor's Prepetition Lender ............................................................5

    E.    Circumstances Impacting the Debtor's Operations and Reason for the
       Bankruptcy Filing ..................................................................................5

    F.    The Debtor's Other Indebtedness ..........................................................6

II.    THE BUDGET .....................................................................................................6

III.    ARGUMENT .......................................................................................................8

    A.    The Debtor Should Be Authorized To Use Cash Collateral To Operate,
       Maintain And Preserve Its Business. .....................................................9

    B.    The Secured Creditors Are Adequately Protected. ................................9

       1.    The Secured Creditors Are Adequately Protected By Equity Cushions....10

       2.    The Secured Creditors Are Adequately Protected By The Continued
          Operations Of The Debtor's Business. ......................................11

       3.    The Secured Creditors Are Adequately Protected By Replacement
          Liens Against The Debtor's Assets...........................................12

IV.    CONCLUSION....................................................................................................12

i

# TABLE OF AUTHORITIES

Page

## CASES

In re Dynaco Corporation,
    162 B.R. 389 (Bankr. D.N.H. 1993) .............................................................9, 11

In re Ernst Home Center, Inc.,
    209 B.R. 955 (Bankr. W.D. Wash. 1997) .............................................................10

In re Immenhausen Corp.,
    164 B.R. 347 (Bankr. M.D. Fla. 1994) .............................................................11

In re Las Vegas Monorail Co.,
    429 B.R. 317, 341 (Bankr. D. Nev. 2010) .........................................................11

In re McCombs Properties VI, Ltd.,
    88 B.R. 261, 265 (Bankr. C.D. Cal. 1988).....................................................10, 11

In re Mellor,
    734 F.2d 1396, 1400 (9th Cir. 1984) .............................................................10

In re Newark Airport/Hotel Ltd. Partnership,
    156 B.R. 444 (Bankr. D.N.J. 1993) .............................................................11

In re Oak Glen R-Vee,
    8 B.R. 213, 216 (Bankr. C.D. Cal. 1981) .............................................................9

In re O'Connor,
    808 F.2d 1393, 1398 (10th Cir. 1987) .............................................................10

In re Prime, Inc.,
    15 B.R. 216, 219 (Bankr. W.D. Mo. 1981)...........................................................9

In re Stein,
    19 B.R. 458 (Bankr. E.D.Pa. 1982) .............................................................11

In re Sunnymead Shopping Center Co.,
    178 B.R. 809, 814 (9th Cir. BAP 1995) .............................................................9

In re Triplett,
    87 B.R. 25 (Bankr. W.D.Tex. 1988).............................................................11

In re Tucson Industrial Partners,
    129 B.R. 614 (9th Cir. BAP 1991).............................................................9

Matter of Pursuit Athletic Footwear, Inc.,
    193 B.R. 713 (Bankr. D. Del. 1996).............................................................11

United Savings Association v. Timbers of Inwood Forest Associates,
    108 S.Ct. 626, 629 (1988).............................................................10

## **STATUTES**

11 U.S.C. § 361 .................................................................................................................... 11

11 U.S.C. § 363(a) .................................................................................................................. 1

**TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY JUDGE, SECURED LENDERS, CREDITORS HOLDING THE TWENTY LARGEST UNSECURED CLAIMS, AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

**PLEASE TAKE NOTICE** that a hearing will be held on _____ before the Honorable Neil W. Bason, United States Bankruptcy Judge for the Central District of California, for the Court to consider the motion (the "Motion") filed by Koi Design LLC, the chapter 11 debtor and debtor in possession herein (the "Debtor"), for entry of interim and final orders authorizing the Debtor to use cash collateral to pay the Debtor's ordinary and necessary expenses set forth on the budget (the "Budget") attached as **Exhibit 3[1]** to the Declaration of Jeremy Husk, the Debtor's Executive Vice President of Operations (the "Husk Declaration"). The proposed order on the Motion is attached hereto as **Exhibit A**.

The Debtor has two secured creditors that assert a lien upon the Debtor's "cash collateral" as that term is defined in 11 U.S.C. § 363(a). Wells Fargo Trade Capital Services, Inc. ("Wells Fargo") is owed approximately $2.8 million pursuant to a revolving line of credit and has a security interest in all of the Debtor's assets. Wells Fargo appears to have perfected its security interest by recording UCC-1 financing statements with the California Secretary of State. Strategic Partners, Inc. ("SPI") has a disputed secured claim in the amount of $5.2 million based upon a default judgment (the "Default Judgment") obtained pre-petition, an Abstract of Judgment recorded in the County of Los Angeles on October 30, 2018 and a Notice of Judgment Lien filed with the California Secretary of State on November 5, 2018. As set forth more fully below and in the Husk Declaration, the Debtor is in the process of attempting to vacate the Default Judgment and, if necessary, the Debtor will seek to avoid SPI's lien as a preference.

SPI's Default Judgment and accompanying lien caused Wells Fargo to cease advancing under the line of credit (while Wells Fargo has continued to sweep the Debtor's funds paid by its customers). While the Debtor was hoping to obtain an expedited ruling on its motion to vacate the Default Judgment and avoid the filing of this case, the briefing schedule on the motion to vacate will

---

[1] For the Court's convenience, a copy of the Budget is also attached to the annexed Memorandum of Points and Authorities.

1    not occur until next week.  Because Wells Fargo has not advanced any funds since December 20,

2    2018 yet continues to collect the Debtor's cash, the Debtor had no choice but to commence its

3    bankruptcy case on January 25, 2019 in order to ensure that it can fund its next payroll (which funds

4    must be advanced by no later than January 31, 2019 in order to pay the February 1, 2019 payroll).

5        Wells Fargo is secured by all of the Debtor's assets, as well as by a personal guaranty from

6    the Debtor's sole shareholder, Kathy Peterson.  SPI is secured by all of the Debtor's assets (even

7    though the Debtor will seek to avoid SPI's lien forthwith if the Default Judgment is not vacated).  As

8    additional adequate protection of their interest in the cash collateral, Wells Fargo and SPI will be

9    granted replacement liens upon all postpetition assets of the Debtor's estate (except any "Avoidance

10    Actions" arising under sections 544, 545, 546, 547, 548, 549, 550 or any similar provisions of the

11    Bankruptcy Code) to the same extent, validity and priority as their respective liens upon the Debtor's

12    prepetition assets.  While the Debtor is hopeful that the secured creditors will consent to use of cash

13    collateral, in the event that Wells Fargo and/or SPI do not consent to such use, the Debtor believes

14    that their respective liens will be adequately protected by equity cushions, the replacement liens and

15    the Debtor's continued business operations.

16        The Debtor's assets include, but are not limited to, accounts receivable, inventory, cash,

17    deposits, furnishings, fixtures and equipment, with an estimated fair market value of approximately

18    $10 million.  This leaves Wells Fargo with an equity cushion of approximately 350%, and SPI with

19    an equity cushion of approximately 25%.

20        It is imperative that the Debtor obtain immediate Court authority to use cash collateral in

21    order to avoid immediate and irreparable harm to the Debtor's business.  The Debtor **must** be able to

22    fund its next payroll in order to avoid a mass exodus of the Debtor's employees and the

23    corresponding harm to its business.[2]

24        **PLEASE TAKE FURTHER NOTICE** that if you wish to object to the relief sought by the

25    Motion, you must appear at the hearing and file any responsive pleading in accordance with the

26    deadline set forth in the accompanying Notice of Emergency Motions.  Your failure to timely object

27

28    [2] The Debtor must fund its payroll by 3:00 p.m. Thursday, January 31, 2019 in order for its
employees to be paid by Friday, February 1, 2019.

1    may be deemed by the Court to constitute consent to the relief requested herein.

2        **PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Motion and

3    attached Memorandum of Points and Authorities, the concurrently filed Husk Declaration and

4    evidence appended thereto, the arguments of counsel and other admissible evidence properly

5    brought before the Court at or before the hearing on this Motion.

6        **WHEREFORE**, the Debtor respectfully requests that this Court enter an order granting the

7    Motion in its entirety and:

8        1.    Authorizing the Debtor to use cash collateral to pay all of the expenses set forth in the

9    Budget;

10        2.    Granting Wells Fargo and SPI as adequate protection of their prepetition collateral

11    and cash collateral, replacement liens upon all postpetition assets of the Debtor's estate (except any

12    "Avoidance Actions" arising under sections 544, 545, 546, 547, 548, 549, 550 or any similar

13    provisions of the Bankruptcy Code) to the same extent, validity and priority as their respective liens

14    upon the Debtor's prepetition assets;

15        3.    Authorizing and directing the applicable banks and other financial institutions to

16    receive, process, honor and pay all checks presented for payment and to honor all electronic payment

17    request made by the Debtor relating to its February 1, 2019 payroll (and to any other post-petition

18    transaction);

19        4.    Scheduling a final hearing on this Motion; and

20        5.    Granting such other and further relief as the Court deems just and proper under the

21    circumstances.

22    DATED:  January 25, 2019                    BRUTZKUS GUBNER

23

24                                By:   /s/ Susan K. Seflin
                                        Susan K. Seflin
25                                        Jessica L. Bagdanov
                                        Proposed Attorneys for Chapter 11 Debtor
26                                        and Debtor in Possession

27

28

3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    FACTUAL BACKGROUND

### A.    General Case Background

1.    On January 25, 2019, KOI Design LLC, a California limited liability company, filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  The Debtor continues to operate its business and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or committee has been appointed in the Debtor's chapter 11 case.

### B.    Description of the Debtor's Business

2.    The Debtor manufactures and sells clothes, which sales are concentrated in the high fashion "work clothes" of the garment business.  The Debtor primarily manufactures and sells "scrubs" for professionals employed in the medical industry.  The Debtor's products are available through on-line sales and from various retail business operations such as Amazon, Uniform Advantage, and Scrubs & Beyond.  The Debtor is one of the only independently owned and woman-run companies in this industry.

3.    The Debtor was a start-up company in 2006 and has grown into a viable business enterprise with sales of approximately $26 million annually and over 45 employees.  The Debtor's principal place of business is located at 1757 Stanford Street, Santa Monica, California 90404.  The Debtor's website is www.koihappiness.com.

4.    For the fiscal year 2018, the Debtor's gross revenue was $26,280,801.  The Debtor's gross revenue for 2017 was $26,262,475.50. The Debtor's year to date revenue for 2019 (a mere 24 days) is approximately $1,600,383.63.  The Debtor was profitable from its inception in 2007 to 2016.  Beginning in 2017, the Debtor's profitability was negatively affected as follows: (i) in 2017, annual sales decreased and certain costs increased (which led to an approximately $1 million loss); and (ii) in 2018, the Debtor liquidated old inventory at a loss (which led to an approximately $1 million loss).

### C.    The Debtor's Management Structure

5.    The Debtor is a California limited liability company.  Kathy Peterson is the founder,

Chief Executive Officer, and managing member of the Debtor, and is the sole equity holder of the Debtor.

6.      Jeremy Husk is the Executive Vice President of Operations for the Debtor.  He has extensive knowledge regarding the Debtor's day-to-day business operations and its finances. Among other things, Mr. Husk performs all the duties of a Chief Financial Officer.

**D.      The Debtor's Prepetition Lender**

7.      The Debtor's prepetition lender is Wells Fargo Trade Capital Services, Inc. ("Wells Fargo").  As of January 25, 2019, Wells Fargo is owed $2,720,186 pursuant to a revolving line of credit and has a security interest in all of the Debtor's assets.  Wells Fargo appears to have perfected its security interest by recording UCC-1 financing statements with the California Secretary of State. Attached as **Exhibit 4** to the Husk Declaration is a recent UCC search setting forth all liens against the Debtor.

**E.      Circumstances Impacting the Debtor's Operations and Reason for the Bankruptcy Filing**

8.      On or about January 11, 2017, Strategic Partners, Inc. ("SPI") filed a complaint (the "Complaint") against the Debtor in the United States District Court for the Central District of California, commencing the action styled, *Strategic Partners, Inc. v. Koi Design LLC*, U.S.D.C. No. 17-cv-00236 TJH (GJSx) (the "Infringement Action").  By the Complaint, SPI asserted claims for relief against the Debtor for, among other things, trademark infringement and intentional interference with prospective economic advantage.

9.      On October 4, 2018, the District Court entered default judgment against the Debtor and in favor of SPI in the amount of $5,266,380.68 (the "Default Judgment").  Since entry of the Default Judgment, SPI has recorded an abstract of judgment against the Debtor's assets and has also recorded judgment liens against the Debtor.

10.      In the Infringement Action, the Debtor was represented by A. Douglas Mastroianni, Esq.  The Debtor has been working diligently to have the Default Judgment vacated and related abstract and judgment liens expunged, on grounds of, among other things, incompetent counsel. Since entry of the Default Judgment, Mr. Mastroianni has been charged with a 21-count indictment

by the State Bar of California for charges relating to acts of moral turpitude and incompetent legal representation for many other clients resulting in terminating sanctions.

11. Notwithstanding the Debtor's efforts to unwind these disputed liens, the Debtor has found itself in a perilous financial situation directly caused by the Default Judgment and subsequent liens resulting therefrom.

12. Specifically, on or about December 11, 2018, Wells Fargo sent the Debtor a Notice of Events of Default and Reservation of Rights letter, giving notice to the Debtor of its alleged default under its loan (the "Wells Loan") because of the judgment liens filed by SPI.

13. Under the terms of the Wells Loan, Wells Fargo sweeps the Debtor's lockbox account (which is where customers remit payments directly) and the Debtor remits receivables paid by credit card to Wells Fargo on a weekly basis. Pursuant to the terms of the Wells Loan, Wells Fargo advances funds to the Debtor in its sole discretion. Because of the judgment liens, Wells Fargo has ceased all advances to the Debtor as of December 20, 2018 and Wells Fargo has been in control of the Debtor's prepetition cash.

14. While the Debtor is working diligently to vacate the Default Judgment and expunge the judgment liens, the Debtor no longer has use of cash collateral to, among other things, pay its employees and fund ongoing business operations. Without the filing of this bankruptcy and obtaining use of cash collateral, the Debtor would have no choice but to immediately fire all of its 45 employees and 10 subcontractors and close its business.

**F.    The Debtor's Other Indebtedness**

15. Aside from the Debtor's obligations to Wells Fargo and SPI as described above, the Debtor has an additional approximately $7 million in general unsecured debt which is owed to approximately 30 entities.

## II.    THE BUDGET

As set forth in the budget (the "Budget"), a true and correct copy of which is attached as **Exhibit 3** to the Husk Declaration (and which is attached hereto for the Court's convenience), the Debtor estimates that its assets currently have a value of approximately $10 million. The Debtor's cash, accounts receivable and inventory total $10,573,721 as of the petition date, and the Debtor's

other assets (including deposits, furnishings, fixtures and equipment) have a value of approximately

$300,000.  Additionally, Wells Fargo has a personal guaranty against the Debtor's owner Kathy

Peterson.

As set forth above, the Debtor commenced this case based on its inability to use its cash

while it is in the process of attempting to vacate the Default Judgment.  As illustrated by the Budget,

the Debtor will be able to operate cash flow positive post-petition.  The Budget sets forth the

minimum requirements of the Debtor to operate its business to accomplish a successful

reorganization for all creditors.  The Budget does not contemplate any "extraordinary" or "luxury"

expense.  The Budget therefore contains the Debtor's basic requirements for operations and is

reasonable.

The Budget does provide for payment of rent of a residence in the city of Santa Monica in the

amount of $4,000 a month to Ms. Peterson (the Debtor's President and owner).  This residence has

historically been used by the Debtor as a location for photo shoots for the Debtor's products, and in

lieu of hotels for out of town employees and customers that the Debtor would otherwise need to rent

a hotel for.  Without the use of this residence, the Debtor would, on average, need to pay for

approximately 20 nights a month in hotels and it would need to rent locations for photo shoots.  Pre-

petition, the Debtor paid $6,000 a month to rent and use this residence.  Post-petition, Ms. Peterson

has agreed to reduce the rent amount to $4,000 a month (which is significantly below market rent

and which results in monthly savings for the Debtor).  The Debtor will include this payment on Ms.

Peterson's Notice of Insider Compensation (the "Insider Comp Notice"), and the Debtor will not pay

any rent to Ms. Peterson unless and until the notice period passes with respect to the Insider Comp

Notice or, if there is an objection, until further order of this Court.  The Debtor will not pay any

insider salaries (which are highlighted on the Budget) until the time period has passed with respect to

the Insider Comp Notices served in accordance with the local rules.

Although the Budget represents the Debtor's best estimate of the necessary expenses

associated with the business, as the ebbs and flows of the Debtor's business are unpredictable, the

needs of the business may fluctuate.  Therefore, the Debtor requests Court authority to deviate from

the total expenses contained in the Budget by no more than 15%, on a cumulative basis, and to

deviate by category (provided the Debtor does not pay any expenses outside of any approved

categories) without the need for further Court order.

In order for the Debtor to operate its business in accordance with the Budget and to fund the

upcoming February 1, 2019[3] payroll, the Debtor must be able to use the revenues that are paid to the

Debtor's lockbox and to the Debtor via credit cards.

## III.    ARGUMENT

The Debtor's use of property of the estate is governed by Section 363 of the Bankruptcy

Code.  Section 363(c)(l) provides in pertinent part:

> If the business of the debtor is authorized to be operated under section … 1108 … of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(l).  A debtor in possession has all of the rights and powers of a trustee with

respect to property of the estate, including the right to use property of the estate in compliance with

Section 363.  *See* 11 U.S.C. § 1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities,

deposit accounts or other cash equivalents in which the estate and an entity other than the estate have

an interest. . . ."  11 U.S.C. § 363(a).  Section 363(c)(2) establishes a special requirement with

respect to "cash collateral," providing that the trustee or debtor in possession may use "cash

collateral" under subsection (c)(l) if:

(A)    each entity that has an interest in such cash collateral consents; or

(B)    the court, after notice and a hearing, authorizes such use, sale or lease in

accordance with the provisions of this section.

*See* 11 U.S.C. § 363(c)(2)(A) and (B).

---

[3] The Debtor must fund its payroll by 3:00 p.m. Thursday, January 31, 2019 in order for its employees to be paid by Friday, February 1, 2019.

Further, upon the request of an entity that has an interest in property proposed to be used by the Debtor, the Court shall prohibit or condition such use "as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).

**A.**     **The Debtor Should Be Authorized To Use Cash Collateral To Operate, Maintain And Preserve Its Business.**

It is well settled that it is appropriate for a chapter 11 debtor to use cash collateral for a reasonable period of time for the purpose of maintaining and operating its property.  11 U.S.C. § 363(c)(2)(B*); In re Sunnymead Shopping Center Co.*, 178 B.R. 809, 814 (9th Cir. BAP 1995) ("*Sunnymead*"); *In re Oak Glen R-Vee*, 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981) .  In addition, where the Debtor is operating a business, it is extremely important that the access to cash collateral be allowed in order to facilitate the goal of reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business." *In re Dynaco Corporation*, 162 B.R. 389 (Bankr. D.N.H. 1993), *quoting In re Stein*, 19 B.R. 458, 459 (Bankr. E.D. PA  1982).  *See also, In re Delco Oil, Inc.,* 599 F.3d 1255, 1258 (11th Cir. 2010) ("a debtor reorganizing his business has a compelling need to use cash collateral in order to meet its daily operating expenses and rehabilitate its business"); *In re Prime, Inc.,* 15 B.R. 216, 219 (Bankr. W.D. Mo. 1981)("it is apparent that the Congress intended business under reorganization to proceed in as normal a fashion as possible").

The Debtor has only commenced its bankruptcy case because Wells Fargo has stopped advances under the Wells Loan based upon the Default Judgment and accompanying liens.  The Debtor believes that it is in the overwhelming best interests of its estate, its business, its employees, its vendors and its creditors to continue to operate and maintain its business as a going concern.  The Court should authorize the Debtor to use cash collateral to continue to operate and maintain its business because the interests of the secured creditors are adequately protected.

**B.**     **The Secured Creditors Are Adequately Protected.**

To the extent that an entity has a valid security interest in the revenues generated by property, those revenues constitute "cash collateral" under Section 363(a) of the Bankruptcy Code.  Pursuant to Section 363(c)(2), the Court may authorize the debtor to use a secured creditor's cash collateral if

1  the secured creditor is adequately protected.  *Sunnymead,* 178 B.R. at 814; *In re Mellor*, 734 F.2d

2  1396, 1400 (9th Cir. 1984).  *See also In re O'Connor,* 808 F.2d 1393, 1398 (10th Cir. 1987); *In re*

3  *McCombs Properties VI, Ltd.,* 88 B.R. 261, 265 (Bankr. C.D. Cal. l988) ("*McCombs*").

4        Pursuant to the Supreme Court case of *United Savings Association v. Timbers of Inwood*

5  *Forest Associates,* 108 S. Ct. 626, 629 (1988) ("*Timbers*") and subsequent case law, the property

6  interest that a debtor must adequately protect pursuant to Section 363(c)(1) and (2) of the

7  Bankruptcy Code is only the value of the lien that secures the creditor's claim.  108 S. Ct. at 630.

8  *See also McCombs, Id.,* at 266.  Section 506(a) "limit[s] the secured status of a creditor (i.e., the

9  secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the

10  collateral."  *McCombs, Id.,* at 266.  *See also, IN re Ernst Home Center, Inc.*, 209 B.R. 955 (Bankr.

11  W.D. Wash. 1997) (adequate protection is not meant to be a guarantee that a creditor will be paid in

12  full … the court must determine whether the creditor's interests are protected as nearly as possible

13  against the possible risks to that interest).

14        1.        **The Secured Creditors Are Adequately Protected By Equity Cushions.**

15        As set forth above, Wells Fargo is oversecured.  The Debtor is indebted to Wells Fargo for

16  approximately $2.8 million.  The Debtor's assets are valued conservatively at $10 million, which

17  makes Wells Fargo oversecured by approximately $7.2 million (or an equity cushion of

18  approximately 350%).  Wells Fargo is also secured by a personal guaranty from the Debtor's sole

19  shareholder, Kathy Peterson.

20        SPI is also oversecured.  SPI's (disputed) Default Judgment is in the amount of

21  approximately $5.2 million (including treble damages), which makes SPI oversecured by

22  approximately $2 million (or an equity cushion of approximately 25%).

23        It is well established that the existence of an equity cushion alone can constitute adequate

24  protection to a secured creditor when a debtor seeks to use cash collateral.  *In re Mellor*, 734 F.2d

25  1396 (9th Cir. 1984) (equity cushion is the classic form of protection for a secured debt justifying the

26  restraint of lien enforcement by a bankruptcy court … "it has been held that the existence of an

27  equity cushion, standing alone, can provide adequate protection").  In *Mellor*, the Ninth Circuit held

28

1  that a 20% equity cushion constituted adequate protection as a matter of law.  *In re Mellor*, 734 F.2d

2  at 1404.

3        **2.        The Secured Creditors Are Adequately Protected By The Continued**

4              **Operations Of The Debtor's Business.**

5        In this case, Wells Fargo and SPI are also adequately protected by replacement liens and by

6  the continued operation of the Debtor's business.  The preservation of the value of a secured

7  creditor's lien is sufficient to provide adequate protection to a secured creditor when a debtor seeks

8  to use cash collateral.  *In re Triplett*, 87 B.R. 25 (Bankr. W.D. Tex. 1988).  *See also In re Las Vegas*

9  *Monorail Co.*, 429 B.R. 317, 341 (Bankr. D. Nev. 2010) (recognizing that other courts "have found

10  that a debtor's use of cash collateral to maintain properties from which rents are being generated is a

11  sufficient form of adequate protection); *In re Stein,* 19 B.R. 458 (Bankr. E.D. Pa. 1982).  In *Stein*,

12  the Court found that, as a general rule, a debtor may use cash collateral where such use would

13  enhance or preserve the value of the collateral, and allowed the debtor therein to use cash collateral

14  even though the secured party had no equity cushion for protection.  The *Stein* Court determined that

15  the use of cash collateral was necessary to the continued operations of the debtor, and that the

16  creditor's secured position could only be enhanced by the continued operation of the debtor's

17  business.  *See also In re McCombs, supra,* where the court determined that the debtor's use of cash

18  collateral for needed repairs, renovations and operating expenses eliminated the risk of diminution in

19  the creditor's interest in the cash collateral and such use would more likely increase cash collateral.

20        The Debtor believes that with its continued business operations, there will not be a

21  diminution in the value of its business.  In the case of *Matter of Pursuit Athletic Footwear, Inc.,* 193

22  B.R. 713, 716 (Bankr. D. Del. 1996), the Court, accepting the debtor's argument that no additional

23  adequate protection payments need be made, held as follows:

24              if there is no actual diminution in the value of [the] collateral
              through the date of the hearing, and [Debtor] can operate profitably
25              post-petition, [creditor] is adequately protected for the use of its
              cash collateral. 11 U.S.C. Section 361; *In re Newark Airport/Hotel*
26              *Ltd. Partnership*, 156 B.R. 444, 450 (Bankr. D.N.J. 1993); *In re*
              *Dynaco*, 162 B.R. 389, 394-5 (Bankr. D.N.H. 1993); *In re*
27              *Immenhausen Corp*., 164 B.R. 347, 352 (Bankr. M.D. Fla. 1994).

28

1  The only way for the Debtor to maximize its going concern value and prevent diminution in the

2  value of its business is for the Debtor to continue to operate its business seamlessly.

3         **3.**      **The Secured Creditors Are Adequately Protected By Replacement Liens**

4                        **Against The Debtor's Assets.**

5        Finally, and in order to provide Wells Fargo and SPI with further adequate protection for the

6  Debtor's use of cash collateral, the Debtor proposes to provide Wells Fargo and SPI with

7  replacements lien against the Debtor's post-petition assets with the same validity, priority, and scope

8  as each respective creditor had with its lien(s) against the Debtor's prepetition assets.

9  **IV.**    **CONCLUSION**

10        **WHEREFORE**, the Debtor respectfully requests that this Court enter an order granting the

11  Motion in its entirety and:

12        1.      Authorizing the Debtor to use cash collateral to pay all of the expenses set forth in the

13  Budget;

14        2.      Granting Wells Fargo and SPI as adequate protection of their prepetition collateral

15  and cash collateral, replacement liens upon all postpetition assets of the Debtor's estate (except any

16  "Avoidance Actions" arising under sections 544, 545, 546, 547, 548, 549, 550 or any similar

17  provisions of the Bankruptcy Code) to the same extent, validity and priority as their respective liens

18  upon the Debtor's prepetition assets;

19        3.      Authorizing and directing the applicable banks and other financial institutions to

20  receive, process, honor and pay all checks presented for payment and to honor all electronic payment

21  request made by the Debtor relating to its February 1, 2019 payroll (and to any other post-petition

22  transaction);

23        4.      Scheduling a final hearing on this Motion; and

24  ///

25

26

27

28

5.      Granting such other and further relief as the Court deems just and proper under the

circumstances.

DATED:  January 25, 2019                    BRUTZKUS GUBNER


By:  /s/ Susan K. Seflin
     Susan K. Seflin
     Jessica L. Bagdanov
     Proposed Attorneys for Debtor
     and Debtor in Possession

1  NICHOLAS ROZANSKY – Bar No. 219855
   SUSAN K. SEFLIN - Bar No. 213865
2  JESSICA L. BAGDANOV - Bar No. 281020
   BRUTZKUS GUBNER
3  21650 Oxnard Street, Suite 500
   Woodland Hills, CA 91367
4  Telephone: (818) 827-9000
   Facsimile: (818) 827-9099
5  Email:   nrozansky@bg.law
            sseflin@bg.law
6            jbagdanov@bg.law

7  Proposed Attorneys for Chapter 11 Debtor and
   Debtor in Possession

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                        **LOS ANGELES DIVISION**

11 | In re                          | Case No. 2:19-bk-10762-NB
12 | KOI DESIGN LLC,                 | Chapter 11
13 |                                 | **INTERIM ORDER AUTHORING DEBTOR
14 |                                 | TO USE CASH COLLATERAL ON AN
   |                                 | INTERIM BASIS PENDING A FINAL
   |                                 | HEARING, GRANTING REPLACEMENT
15 |                                 | LIENS AND SETTING A FINAL HEARING**

16

17

18                                    **Original Hearing:**
                                      **Date:**
                                      **Time:**
19
20                                    **Continued Hearing:**
                                      **Date:**
21                                    **Time:**
                                      **Place:**   Courtroom 1545
22                                                 255 E. Temple Street
                                                   Los Angeles, CA 90012
23

24

25

26

27

28

1

2064679

**EXHIBIT A_001**

1    On ___ at ___, an interim hearing (the "Interim Hearing") was held before the Honorable

2    Neil W. Bason, United States Bankruptcy Judge for the Central District of California, for the Court

3    to consider the *Emergency Motion For Authority to: (A) Use Cash Collateral on an Interim Basis*

4    *Pending a Final Hearing; (B) Grant Replacement Liens; and (C) Set Final Hearing* [Doc. #__] (the

5    "Motion") filed by Koi Design LLC, the chapter 11 debtor and debtor in possession herein (the

6    "Debtor").  Appearances were made as noted on the record.

7    By the Motion, the Debtor sought the following: (1) authorization to use cash collateral on an

8    interim basis, (2) the granting to Wells Fargo and SPI, as adequate protection of their prepetition

9    collateral and cash collateral, replacement liens upon all postpetition assets of the Debtor's estate

10   (except any "Avoidance Actions" arising under sections 544, 545, 546, 547, 548, 549, 550 or any

11   similar provisions of the Bankruptcy Code) to the same extent, validity and priority as their

12   respective liens upon the Debtor's prepetition assets, and (3) the setting of a final hearing on the

13   relief requested in the Motion.

14   The Court, having reviewed and considered the Motion and all pleadings and papers filed in

15   support thereof, having heard and considered the arguments of counsel made at the hearing, having

16   found that notice of the Motion was adequate and appropriate under the circumstances, having set

17   forth the Court's findings of fact and conclusions of law on the record, and finding good cause

18   appearing therefor,

19   **IT IS HEREBY ORDERED AS FOLLOWS:**

20   1.      The Motion is granted on an interim basis to the extent set forth in this Order.

21   2.      <u>Cash Collateral:</u>  The Debtor is authorized to use cash collateral on an interim basis to

22   pay all of the expenses set forth in the Budget attached as **Exhibit 3** to the declaration of Jeremy

23   Husk [Doc. #_] filed in support of the Motion.

24   3.      The Debtor is authorized to deviate from the total expenses contained in the

25   projections by no more than 15% on a cumulative basis and to deviate by categories, provided the

26   Debtor does not pay any expenses outside of any approved categories.

27

28

2

**EXHIBIT A_002**

4.     Wells Fargo and SPI are hereby granted replacement liens upon all postpetition assets of the Debtor's estate (except any "Avoidance Actions" arising under sections 544, 545, 546, 547, 548, 549, 550 or any similar provisions of the Bankruptcy Code) to the same extent, validity and priority as their respective liens upon the Debtor's prepetition assets, as adequate protection of their prepetition collateral and cash collateral;

5.     All applicable banks and other financial institutions are authorized and directed to receive, process, honor and pay all checks presented for payment and to honor all electronic payment request made by the Debtor relating to its February 1, 2019 payroll (and to any other post-petition transaction);

6.     A continued hearing on the Motion will be held on _____ at ___.

7.     The Debtor shall provide notice of the continued hearing on the Motion upon the top twenty (20) general unsecured creditors, all secured creditors, the Office of the United States Trustee and those parties who have requested special notice.

IT IS SO ORDERED.

# # #

**EXHIBIT A_003**

14 Week Cash Flow Projection

| | 1/28/2019 | 2/4/2019 | 2/11/2019 | 2/18/2019 | 2/25/2019 | 3/4/2019 | 3/11/2019 | 3/18/2019 | 3/25/2019 | 4/1/2019 | 4/8/2019 | 4/15/2019 | 4/22/2019 | 4/29/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Balance, Beginning** | 133,913 | 141,565 | 266,954 | 255,653 | 282,578 | 219,160 | 271,050 | 241,745 | 324,122 | 328,996 | 351,061 | 284,491 | 328,723 | 384,836 |
| **Receipts** | | | | | | | | | | | | | | |
| Customer Payments | 350,000 | 400,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 |
| Rent (from sublet of parking spaces) | | | | 9,548 | | 1,500 | | | | | 1,500 | | | |
| **Total Receipts** | 350,000 | 400,000 | 425,000 | 434,548 | 425,000 | 426,500 | 425,000 | 425,000 | 425,000 | 425,000 | 426,500 | 425,000 | 425,000 | 425,000 |
| **Total Cash Available** | 483,913 | 541,565 | 691,954 | 690,201 | 707,578 | 645,660 | 696,050 | 666,745 | 749,122 | 753,996 | 777,561 | 709,491 | 753,723 | 809,836 |
| **Disbursement** | | | | | | | | | | | | | | |
| Salaries / Guaranteed Payment (biweekly) | | | | | | | | | | | | | | |
| Regular Payroll | 97,000 | | 97,000 | | 97,000 | | 97,000 | | 97,000 | | 97,000 | | 97,000 | |
| Kathy Peterson - Guaranteed Payment | | | 7,038 | | 3,519 | | 3,519 | | 3,519 | | 3,519 | | 3,519 | |
| Jeremy Husk - Insider | | | 13,846 | | 6,923 | | 6,923 | | 6,923 | | 6,923 | | 6,923 | |
| Bryan Takamoto - Insider | | | 11,308 | | 5,654 | | 5,654 | | 5,654 | | 5,654 | | 5,654 | |
| EE Commission | | | 10,000 | | | | 10,000 | | | | 11,000 | | | |
| Payroll Taxes | 12,000 | | 14,000 | | 10,000 | | 10,000 | | 8,000 | | 9,000 | | 8,000 | |
| Payroll Fees | 600 | | 600 | | 600 | | 600 | | 600 | | 600 | | 600 | |
| Health Insurance Withholding | (2,400) | | (2,400) | | (2,400) | | (2,400) | | (2,400) | | (2,400) | | (2,400) | |
| 401k | 2,500 | | 3,000 | | 2,700 | | 3,000 | | 2,700 | | 3,000 | | 2,700 | |
| Total | 109,700 | | 154,392 | | 123,996 | | 134,296 | | 121,996 | | 134,296 | | 121,996 | |
| Freelance / Contract Labor | | | | | | | | | | | | | | |
| Warehouse (weekly) | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 |
| Sales Representatives (monthly, 15th) | | | 55,000 | | | | 60,000 | | | | | 70,000 | | |
| Merchandiser (biweekly) | 4,808 | | 4,808 | | 4,808 | | 4,808 | | 4,808 | | 4,808 | | 4,808 | |
| Total | 20,808 | 16,000 | 75,808 | 16,000 | 20,808 | 16,000 | 80,808 | 16,000 | 20,808 | 16,000 | 20,808 | 86,000 | 20,808 | 16,000 |
| Inventory Purchases (assumes COD terms) | 50,000 | 200,000 | 150,000 | 350,000 | 200,000 | 300,000 | 200,000 | 300,000 | 250,000 | 200,000 | 300,000 | 250,000 | 200,000 | 200,000 |
| Accountant | | | | 1,725 | | | | | 1,725 | | | 1,725 | | |
| Insurance | | | | | | | | | | | | | | |
| Worker's Comp (Am Trust) | | | 4,156 | | | | 4,156 | | | | 4,156 | | | |
| D&O/EPLI (1st Ins.) | | | | | 2,137 | | | | | 2,137 | | | | 2,137 |
| Medical (CalChoice) | | 30,000 | | | | 30,000 | | | | 30,000 | | | | |
| Dental/Life (MetLife) | 3,600 | | | | 3,600 | | | | | 3,600 | | | | 3,600 |
| General Liability / Umbrella (Liberty Mutual) | 3,383 | | | | 3,383 | | | | 3,383 | | | | 3,383 | |
| Total | 6,983 | 30,000 | 4,156 | - | 9,120 | 30,000 | 4,156 | - | 3,383 | 35,737 | 4,156 | - | 3,383 | 5,737 |
| Rent | 114,492 | | | | 93,401 | | | | | | 93,401 | | | 93,401 |
| Rent (Insider to Kathy Peterson) | | | 4,000 | | | | 4,000 | | | | | 4,000 | | |
| Bank Fees | | | | | | | | | | | | | | |
| Comerica - Merchant CC Fees | 13,000 | | 5,000 | | 13,000 | | 5,000 | | | 13,000 | 5,000 | | | 13,000 |
| Comerica - Wire / Online Banking Fees | | | 500 | | | | 500 | | | | 500 | | | |
| Wells Fargo - Analyzed Fees | | | 1,200 | | | | 1,200 | | | | 1,200 | | | |
| Total | 13,000 | - | 6,700 | - | 13,000 | - | 6,700 | - | - | 13,000 | 6,700 | - | - | 13,000 |
| Utilities | | | | | | | | | | | | | | |
| ADT / Protection1 | | | | 198 | | | | 198 | | | | 198 | | |
| Trash / Water (City of SM) | | | | 2,000 | | | | 2,000 | | | | 2,000 | | |
| Electricity (Edison) | | | | 200 | | | | 200 | | | | 200 | | |
| Pond Maintenance | | | 170 | | | | 170 | | | | | 170 | | |
| Total | - | - | 170 | 2,398 | - | - | 170 | 2,398 | - | - | - | 2,568 | - | - |
| Licensing Royalties | | | | 15,000 | | | | | | | | | | |

**EXHIBIT 3_001**

14 Week Cash Flow Projection

| | 1/28/2019 | 2/4/2019 | 2/11/2019 | 2/18/2019 | 2/25/2019 | 3/4/2019 | 3/11/2019 | 3/18/2019 | 3/25/2019 | 4/1/2019 | 4/8/2019 | 4/15/2019 | 4/22/2019 | 4/29/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Equipment Contracts** | | | | | | | | | | | | | | |
| Copiers Lease / Service / Supplies | 4,766 | | | | 4,766 | | | | | | 4,766 | | | 4,766 |
| Forklift Lease | | | | | 627 | | | | | | 627 | | | 627 |
| Postage Meter | | | | | | | | | | 1,239 | | | | |
| Total | 4,766 | - | - | - | 5,393 | - | - | - | 1,239 | 5,393 | - | - | - | 5,393 |
| | | | | | | | | | | | | | | |
| **Telephone / Internet** | | | | | | | | | | | | | | |
| TPx Communications (phone) | | 1,230 | | | | 1,230 | | | | | | 1,230 | | |
| XO Communications (internet) | | 1,680 | | | | 1,680 | | | | | | 1,680 | | |
| Verizon (wireless) | | 600 | | | | 600 | | | | | | 600 | | |
| AT&T (wireless) | | 300 | | | | 300 | | | | | | 300 | | |
| Total | - | 3,810 | - | - | - | 3,810 | - | - | - | - | - | 3,810 | - | - |
| | | | | | | | | | | | | | | |
| **Supplies** | | | | | | | | | | | | | | |
| Office Supplies | | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Warehouse Supplies | | 3,500 | | 3,500 | | 3,500 | | 3,500 | | 3,500 | | 3,500 | | 3,500 |
| Total | - | 3,600 | 100 | 3,600 | 100 | 3,600 | 100 | 3,600 | 100 | 3,600 | 100 | 3,600 | 100 | 3,600 |
| | | | | | | | | | | | | | | |
| **Courier & Delivery** | | | | | | | | | | | | | | |
| UPS | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Fedex | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Others | | | 400 | | | | 400 | | | | | 400 | | |
| Total | 11,000 | 11,000 | 11,400 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 |
| | | | | | | | | | | | | | | |
| **Computer Expenses** | | | | | | | | | | | | | | |
| Email hosting - Google | | 600 | | | | 600 | | | | | 600 | | | |
| Adobe CS License | | | | | | | | | | | | 10,000 | | |
| ERP Services and Contract (Exenta) | | | | 300 | | | | 300 | | 5,203 | | 300 | | |
| EDI Services (OpenText) | | | 1,200 | | | | 1,200 | | | | | 1,200 | | |
| EDI Services (Diamond Data) | | | | | | | | | | | | 2,500 | | |
| Web Cart (Quivers) | | | 275 | | | | 275 | | | | | 275 | | |
| Total | - | 600 | 1,475 | 300 | - | 600 | 1,475 | 300 | - | 5,203 | 600 | 14,275 | - | - |
| | | | | | | | | | | | | | | |
| **Marketing Expenses** | | | | | | | | | | | | | | |
| Digital Advertising | | 2,000 | | | | 2,000 | | | | | 2,000 | | | 2,000 |
| Photoshoot | | | 16,500 | | | | | | | | 10,000 | | | |
| Total | - | 2,000 | 16,500 | - | - | 2,000 | - | - | - | 12,000 | - | - | - | 2,000 |
| | | | | | | | | | | | | | | |
| Postage | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| | | | | | | | | | | | | | | |
| EE Expense Reimbursement | 4,000 | | 4,000 | | 4,000 | | 4,000 | | 4,000 | | 4,000 | | 4,000 | |
| | | | | | | | | | | | | | | |
| Travel and Entertainment | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| | | | | | | | | | | | | | | |
| Miscellaneous | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| | | | | | | | | | | | | | | |
| **Total Disbursement** | 342,348 | 274,610 | 436,301 | 407,623 | 488,418 | 374,610 | 454,305 | 342,623 | 420,126 | 402,935 | 493,070 | 380,768 | 368,887 | 357,731 |
| **Cash Balance, ending** | 141,565 | 266,954 | 255,653 | 282,578 | 219,160 | 271,050 | 241,745 | 324,122 | 328,996 | 351,061 | 284,491 | 328,723 | 384,836 | 452,105 |

**NOTES:**

* Negative amount for "Health Insurance Withholding" under Salaries section is the Section 125 EE contribution to health care premiums. This amount is part of EE's gross salary, but is deducted from their paychecks. The amount not paid to them becomes a reduction of the company's health insurance expenses paid out to the health insurance carriers

* All amounts for insider compenstation including salaries and rent will be paid pursuant to the Notices of Insider Compensation

**EXHIBIT 3_002**

14 Week Cash Flow Projection

| | 1/28/2019 | 2/4/2019 | 2/11/2019 | 2/18/2019 | 2/25/2019 | 3/4/2019 | 3/11/2019 | 3/18/2019 | 3/25/2019 | 4/1/2019 | 4/8/2019 | 4/15/2019 | 4/22/2019 | 4/29/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Estimated Roll of Accounts Receivable* | | | | | | | | | | | | | | |
| *Starting Accounts Receivable* | 3,092,808 | 3,132,808 | 3,172,808 | 3,187,808 | 3,202,808 | 3,267,808 | 3,332,808 | 3,447,808 | 3,562,808 | 3,727,808 | 3,742,808 | 3,757,808 | 3,822,808 | 3,887,808 |
| *Plus Invoices* | 400,000 | 450,000 | 450,000 | 450,000 | 500,000 | 500,000 | 550,000 | 550,000 | 600,000 | 450,000 | 450,000 | 500,000 | 500,000 | 450,000 |
| *Less Returns / Credits* | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| *Less Payments* | 350,000 | 400,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 |
| *Ending Accounts Receivable* | 3,132,808 | 3,172,808 | 3,187,808 | 3,202,808 | 3,267,808 | 3,332,808 | 3,447,808 | 3,562,808 | 3,727,808 | 3,742,808 | 3,757,808 | 3,822,808 | 3,887,808 | 3,902,808 |
| *Estimated Roll of Inventory* | | | | | | | | | | | | | | |
| *Starting Inventory* | 7,347,000 | 7,153,000 | 7,078,500 | 6,954,000 | 7,029,500 | 6,924,500 | 6,919,500 | 6,784,000 | 6,748,500 | 6,632,500 | 6,558,000 | 6,583,500 | 6,528,500 | 6,423,500 |
| *Plus Inventory Purchases* | 50,000 | 200,000 | 150,000 | 350,000 | 200,000 | 300,000 | 200,000 | 300,000 | 250,000 | 200,000 | 300,000 | 250,000 | 200,000 | 200,000 |
| *Less Inventory Shipped* | 244,000 | 274,500 | 274,500 | 274,500 | 305,000 | 305,000 | 335,500 | 335,500 | 366,000 | 274,500 | 274,500 | 305,000 | 305,000 | 274,500 |
| *Ending Inventory* | 7,153,000 | 7,078,500 | 6,954,000 | 7,029,500 | 6,924,500 | 6,919,500 | 6,784,000 | 6,748,500 | 6,632,500 | 6,558,000 | 6,583,500 | 6,528,500 | 6,423,500 | 6,349,000 |
| AR/Inventory/Cash as of 1/25/19 | 10,573,721 | | | | | | | | | | | | | |
| Total AR/Inventory/Cash | 10,427,373 | 10,518,262 | 10,397,461 | 10,514,886 | 10,411,468 | 10,523,358 | 10,473,553 | 10,635,430 | 10,689,304 | 10,651,869 | 10,625,799 | 10,680,031 | 10,696,144 | 10,703,913 |

**EXHIBIT 3_003**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
21650 Oxnard St., Suite 500, Woodland Hills, California 91367

A true and correct copy of the foregoing document entitled: **DEBTOR'S NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION FOR AUTHORITY TO: (A) USE CASH COLLATERAL ON AN INTERIM BASIS PENDING A FINAL HEARING; (B) GRANT REPLACEMENT LIENS; AND (C) SET FINAL HEARING; MEMORANDUM OF POINTS AND AUTHORITIES [11 U.S.C. § 363 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 25, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- ssefin@bg.law
- ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

[To Be Served]

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**[To Be  Served]**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 25, 2019 | Susan K. Seflin | /s/ Susan K. Seflin |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                        **F 9013-3.1.PROOF.SERVICE**