NICHOLAS ROZANSKY – Bar No. 219855
JASON B. KOMORSKY – Bar No. 155677
SUSAN K. SEFLIN - Bar No. 213865
JESSICA L. BAGDANOV – Bar No. 281020
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:   (818) 827-9099
Email:      nrozansky@bg.law
            jkomorsky@bg.law
            sseflin@bg.law
            jbagdanov@bg.law

Attorneys for Plaintiff and Chapter 11
Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>KOI DESIGN LLC, | Case No. 2:19-bk-10762-NB<br><br>Chapter 11<br><br>Adv. Case No. |
| KOI DESIGN LLC,<br><br>          Plaintiff,<br><br>v.<br><br>A. DOUGLAS MASTROIANNI dba MASTROIANNI LAW FIRM; MARRON LAWYERS, APC; THE BLOOM FIRM, APC; and DOES, 1 through 25,<br><br>          Defendant. | **COMPLAINT FOR:**<br>1.   **INTENTIONAL BREACH OF FIDUCIARY DUTY;**<br>2.   **FRAUDULENT CONCEALMENT;**<br>3.   **BREACH OF FIDUCIARY DUTY;**<br>4.   **LEGAL MALPRACTICE;**<br>5.   **NEGLIGENT SUPERVISION;**<br>6.   **CONSTRUCTIVE FRAUD;**<br>7.   **AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS; AND**<br>8.   **TURNOVER OF PROPERTY OF THE ESTATE** |

2127663

Koi Design LLC, the plaintiff and chapter 11 debtor and debtor in possession herein ("Koi"), hereby complains and alleges as against defendants A. Douglas Mastroianni dba Mastroianni Law Firm ("Mastroianni"), Marron Lawyers, APC ("Marron"), and The Bloom Firm, APC ("Bloom" and collectively, with Mastroianni and Marron, the "Defendants") as follows:

## I.    INTRODUCTION

1.    In the words of a federal district court magistrate (whose opinion was adopted by the district court) describing Mastroianni, Koi's lawyer in the action (the "SPI Litigation") styled *Strategic Partners, Inc. v. Koi Design, LLC*, case no CV 17-236-TJH (GJSx) (CD Cal. April 22, 2019) (Dkt. 158)(emphasis added):  "All of the work done by Plaintiff, as well as both the Magistrate and District Judges, is wasted. ***It is all tainted by former counsel's conduct from day one.***"

2.    This lawsuit seeks redress for Koi's former counsel's conduct [Mastroianni], which at all times fell hopelessly below that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer.  Mastroianni's conduct included, without limitation, failing to timely file an answer, failing to timely participate in a Rule 26 conference, failing to timely respond to discovery, and providing baseless discovery responses that led to the imposition of significant monetary sanctions and the ultimate entry of a default judgment with treble damages against Koi.

3.    Incompetence aside—and there is abundant evidence of that—this action also seeks redress for multiple breaches of fiduciary duty and, specifically, the duty of a lawyer to provide full and fair disclosures to Koi.  It is not simply the case that Mastroianni blew deadlines and occasioned a default judgment as a sanction against Koi by sheer force of his incompetence (which he did); rather, at all relevant times herein Mastroianni actively hid from Koi the true state of litigation affairs and, in several instances, purposefully misled Koi as to those state of affairs.

4.    For their part, Marron and Bloom, the two law firms that employed Mastroianni while he was counsel for Koi in the SPI Litigation, failed to properly supervise Mastroianni and, like Mastroianni, failed to disclose material information to Koi relating to the SPI Litigation.  Marron and Bloom also failed to disclose to Koi the numerous instances of malpractice occasioned by

2

Mastroianni's conduct during the course of the SPI Litigation.  Koi believes that discovery will

reflect that Marron and Bloom were or should have been aware of Mastroianni's shortcomings and

should have put in place measures to protect their client (Koi).  On information and belief,

Mastroianni's improper conduct in the SPI Litigation was not an isolated event but, rather, indicative

of a pattern of conduct.  Indeed, on December 26, 2018, the State Bar of California issued a 21-count

*Notice of Disciplinary Charges* ("Notice of Disciplinary Charges") that not only included allegations

of similar misconduct with respect to other clients, but also illustrated that such misconduct occurred

during the periods he was employed by Marron and then later Bloom.  Nevertheless, both firms

turned a blind eye to Mastroianni's egregious misconduct from day one or took feckless steps that

failed to address the problem or stem the damages.  The Notice of Disciplinary Charges is attached

hereto as **Exhibit A**.

5.      As a result of Defendants' breaches of fiduciary duty and malpractice, Koi was hit

with monetary sanctions and a default judgment was entered against Koi for $5,266,380.68 (which

included approximately $3.7 million in treble damages based on Mastroianni's willful conduct) and

Koi was forced to file for bankruptcy protection.  Moreover, Koi paid Defendants tens of thousands

of dollars in legal fees for services that were either never rendered or were rendered incompetently.

Koi has been forced to spend a considerable amount of money attempting to undo the damage

caused by Defendants' conduct.  It is not merely that Defendants failed to present highly probative

arguments in Koi's defense; rather, Defendants' actions resulted in Koi never even receiving its day

in court or the opportunity to present its underlying case on the merits.

6.      Instead of prevailing in the action or at least negotiating a reasonable settlement, Koi

found itself in the worst possible shape due to Defendants' conduct alleged herein, with a default

judgment for millions of dollars and no means to pay such a judgment and continue to operate its

business (which is why it was forced to commence its bankruptcy case).

7.      On January 25, 2019, subsequent to the entry of the default judgment against Koi and

directly as a result thereof, Koi filed a voluntary petition under chapter 11 of title 11 of the United

States Code (the "Bankruptcy Code") in the United States Bankruptcy Court, Central District of

California, Los Angeles Division (the "Bankruptcy Court"), Bankr. Case No. 2:19-bk-10762-NB.

2127663

[Doc. # No. 1]. Koi continues to operates its business and manage its financial affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in Koi's chapter 11 case.

## II.    PARTIES

8.    Plaintiff Koi brings this action in its capacity as the chapter 11 debtor and debtor in possession of this estate. Koi is a California limited liability company.

9.    Defendant Mastroianni dba Mastroianni Law Firm is an individual who, at all relevant times, resided in the Central District of California, and is an attorney licensed to practice in the State of California.

10.    Defendant Marron is a professional corporation organized under the laws of the State of California headquartered in Long Beach, California.

11.    Defendant Bloom is a professional corporation organized under the laws of the State of California headquartered in Woodland Hills, California.

## III.    JURISDICTION, VENUE, AND TIMELINESS

12.    This action is a core proceeding under 28 U.S.C. § 157(b)(2).

13.    This Court also has subject matter jurisdiction over this action under 28 U.S.C. §1334(b), and General Order No. 13-05 of the District Court for the Central District of California, in that the action arises under, arises in and/or relates to Koi's bankruptcy case and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H) and (O).

14.    Jurisdiction is proper because Defendants contracted with Koi to perform legal services in California and because Defendants, and each of them, committed legal malpractice and breached their fiduciary duties in a manner that caused injury in California. Defendants also reside in California.

15.    Venue in this Court is proper under 28 U.S.C. § 1409(a).

16.    Koi consents to entry of a final judgment by the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 7008 and Local Bankruptcy Rule 7008-1.

/ / /

/ / /

2127663

## IV.    BACKGROUND INFORMATION

17.    Koi was sued in the United States District Court for the Central District of California (Western Division) (the "District Court") by Strategic Partners, Inc. ("SPI") on January 11, 2017. SPI asserted claims against Koi for, among other things, trademark infringement and intentional interference with prospective economic advantage. At all relevant times herein, Koi has disputed all claims for relief asserted by SPI in the SPI Litigation.

18.    Koi retained Marron and Mastroianni to represent it in the SPI Litigation. At that time, Mastroianni was employed by Marron. From the outset of Mastroianni's representation of Koi, Mastroianni and Marron failed to act competently and keep Koi abreast of material events. While at Marron, Mastroianni and Marron failed to timely file an answer or participate in the court-required early meeting of counsel. The former failure caused the issuance of an order to show cause and the latter resulted in SPI filing a unilateral Rule 26 statement.

19.    While at Marron, Mastroianni billed Koi for work on a cross-complaint and on a 12(b)(6) motion, which work was never presented to Koi nor filed with the court.

20.    Mastroianni transitioned from Marron to Bloom in or around June 2017. During this transition, discovery responses were due to SPI by June 19, 2017. Upon information and belief, Marron was concerned that such discovery would be timely served. However, rather than assisting Koi in getting a needed extension of the discovery due date, on or about June 16, 2017—just three days before discovery responses were due—Marron merely pressured Koi to confirm that Koi was terminating Marron's representation prior to the discovery due date (apparently in the hopes that Marron would not be responsible for a missed discovery deadline). Ultimately, Marron and Mastroianni missed the deadline for responding to this discovery days before Mastroianni filed a substitution of attorney formally removing the Marron firm from the action. Moreover, when Koi asked Mastroianni about complying with the June 19, 2017 discovery deadline, Mastroianni stated via text message that the deadline had been extended.

21.    Indeed, Mastroianni's wholesale failure to participate in the early meeting of counsel and to provide discovery led to confessions by Mastroianni to the court of his failings (which admissions were not provided to Koi), and a sanctions motion filed by SPI against Koi and its

2127663

counsel.  Mastroianni's subsequent failure to provide substantive discovery responses led to a

motion to compel filed against Koi.  Mastroianni's failure to comply with the court's subsequent

order led SPI to file a motion for terminating sanctions against Mastroianni and Koi, which motion

was granted.

22.    The following timeline identifies the numerous court proceedings and failings by

Defendants with respect thereto. The failure to take certain action or provide certain information

ascribed to Mastroianni in the timeline below applies equally to the respective law firms during the

relevant time periods.

| Date | Action (or Inaction) |
|---|---|
| January 11, 2017 | SPI files its complaint (the "SPI Complaint") against Koi in the District Court for trademark infringement. |
| January 11, 2017 | Mastroianni / Marron retained by Koi to defend action. |
| January 27, 2017 | Jeremy Husk sent email to Mastroianni inquiring as to the status of Koi's response to the SPI Complaint (believed to be due February 2, 2017).  In response, Mastroianni advised that he would seek an extension of the deadline, would advise Koi of any problems, and expected that a response to the SPI Complaint would not be due until late February 2017 or early March 2017. |
| February 2, 2017 | Mastroianni failed to file a timely response to complaint by initial due date of February 2, 2017 and did not obtain timely extension of the deadline.  Mastroianni failed to advise Koi accordingly. |
| February 3, 2017 | As a result of Mastroianni's conduct, the District Court issued an order to show cause ("OSC") for SPI to show cause why the SPI Litigation should not be dismissed, for lack of prosecution. *Link v. Wabash R. Co.*, 370 U.S. 626 (1962) (court has inherent power to dismiss for lack of prosecution on its own motion). "[Koi] **did not answer the complaint,** yet [SPI has] not requested entry of default, pursuant to Fed. R. Civ. P. 55(a). [SPI] may satisfy this order by seeking entry of default, by dismissing the complaint, or by filing a declaration regarding the status of the case. [SPI] must provide the Court with a chambers copy of any declaration filed in connection with this Order to Show Cause, pursuant to the Courts Standing Order."  OSC filed February 3, 2017 [D.C. Doc. #12]. Mastroianni failed to advise Koi of the OSC. |
| February 3, 2017 | Koi and SPI file a stipulation to extend time to respond to the initial complaint [D.C. Doc. #13], which sets the new response date of March 2, 2017. |
| March 2, 2017 | Koi's answer to the SPI Complaint is filed. [D.C. Doc. #15].  Mastroianni fails to comply with Local Rule 7.1-1 and fails to include Notice of Interested Parties [D.C. Doc. #18].  Mastroianni did not show Koi a copy of the answer prior to being filed, nor did Mastroianni send Koi a conformed copy of the answer. |

2127663

| Date | Action (or Inaction) |
|---|---|
| April 18, 2017 | SPI files its *Notice of [Koi's] Refusal to Participate in a Rule 26(f) Conference, In Violation of Court Order* [D.C. Doc. #19] pursuant to which SPI informs the District Court that Koi's counsel refused to participate in a Rule 26(f) conference of counsel. Mastroianni fails to advise Koi of this filing. |
| May 12, 2017 | Mastroianni filed an ex parte application [D.C. Doc. #22] seeking to continue the Rule 26(f) conference scheduled for May 15, 2017. In the application, Mastroianni states that his failure to participate in the rule 26(f) conference and report "has resulted from a series of errors in which [Mastroianni] has been frequently absent from the [Marron] office for medical reasons and <u>no one has taken over the handling of his mater in his absence, or calendared the date of the conference.</u>" In the ex parte application, Mastroianni also confessed that the "failure to participate in the Rule 26 Conference and preparation of the Joint Report" was solely his error, and that he "took responsibility" and "believe[d] he [could not] credibly object to the issuance of a reasonable monetary sanction" for his behavior. Mastroianni failed to advise Koi of his failures detailed in this filing or of his apparent medical condition that had been preventing him from adequately representing Koi. |
| June 16, 2017 | Mastroianni files substitution of attorney, terminating Marron's representation. [D.C. Doc. #28]. Marron insists that Koi confirm it terminated Marron's representation prior to due date for discovery responses.<br><br>Mastroianni never filed a substitution of counsel adding Bloom to the case, however Bloom was added to the case no later than August 22, 2017. See D.C. Doc. ##37, 38. |
| June 19, 2017 | Mastroianni failed to serve timely responses to SPI's discovery requests, despite having told Koi via text message that the June 19, 2017 deadline had been extended (even though he did not secure such extension from SPI). |
| July 31, 2017 | District Court orders Koi to show cause "why it should not be sanctioned for failure to participate in the meet and confer process as required by both the Local Rules of this District and this Court's procedures regarding discovery." [D.C. Doc. #33]. Mastroianni fails to advise Koi of the order to show cause. |
| August 3, 2017 | Mastroianni apologized to the District Court and counsel for his failure to engage prior to the District Court's intervention, and promised that there would be no problems in the future." See D.C. Doc. #34 (minutes of telephone conference regarding discovery dispute). Mastroianni failed to advise Koi of the telephone conference. |
| August 8, 2017 | Mastroianni fails to appear for telephonic hearing. Magistrate issues Order to Show Cause [D.C. Doc. #35]. Mastroianni again fails to advise Koi of the order to show cause. |
| August 15, 2017 | SPI files first motion to compel [D.C. Doc. #36] seeking, among other things, to compel Koi to produce responsive documents to its discovery. |

7

| Date | Action (or Inaction) |
|------|----------------------|
| August 22, 2017 | Mastroianni files two declarations in response to the motion to compel but fails to file an opposition  [D.C. Doc. ##37, 38]. Mastroianni never advises Koi of the motion to compel. |
| September 26, 2017 | SPI serves request for admissions on Mastroianni; REQUEST FOR ADMISSION NO. 4 asks: Admit that YOUR use of the KOI SAPPHIRE mark is confusingly similar to SPI's Sapphire mark.  Mastroianni fails to advise Koi of the requests for admission until well after they had become due (and never advised Koi that the responses would be late). |
| | Mastroianni fails to respond to the request for admissions and never advises Koi accordingly. |
| October 3, 2017 | Magistrate order granting SPI's motion to compel [D.C. Doc. #42] and directing briefing regarding fees and cost and/or sanctions, Magistrate permitted SPI to file motion for sanctions or fees and costs based on the lack of a "substantial basis in law or fact" in Koi's "opposition." Mastroianni failed to advise Koi of the order granting SPI's motion to compel. |
| October 12, 2017 | Mastroianni fails to obey Magistrate order requiring verified supplemental discovery responses no later than October 12, 2017.  See D.C. Doc. #42. Mastroianni fails to advise Koi accordingly. |
| October 16, 2017 | SPI files motion for sanctions [D.C. Doc. #43].  Mastroianni fails to advise Koi of the motion for sanctions. |
| | Mastroianni fails to obey Magistrate order directing Koi to produce documents responsive to discovery. See Magistrate Order, D.C. Doc. #42. Mastroianni fails to advise Koi accordingly. |
| November 16, 2017 | SPI files motion for terminating sanctions [D.C. Doc. #49].  Mastroianni fails to advise Koi of the motion for terminating sanctions. |
| November 28, 2017 | Mastroianni opposes SPI's October 16, 2017 motion for sanctions, filing a memorandum in opposition along with declarations of Mastroianni and Jeremy Husk [D.C. Doc. ##50, 51, 52]. However, Mastroianni never advises Koi of the October 16, 2017 motion for sanctions and misled Jeremy Husk as to the purpose of the declaration he signed. |
| January 19, 2018 | Magistrate grants SPI's ex parte application for leave to file a motion to compel discovery responses [D.C. Doc. #64].<br><br>Magistrate also issues an "Order Requiring Action," ordering Koi to submit a declaration no later than January 25, 2018 addressing Koi's failure to meet and confer with SPI regarding additional discovery disputes [D.C. Doc. #65].  Mastroianni fails to advise Koi of the Order Requiring Action. |
| January 22, 2018 | SPI files second motion to compel production of documents and discovery responses [D.C. Doc. #66].  Mastroianni fails to oppose the second motion to compel and never advises Koi of the second motion to compel. |
| January 22, 2018 | Mastroianni files substitution of attorney, terminating The Bloom Firm's representation and substituting himself, "Mastroianni Law Firm" as counsel of record for Koi [D.C. Doc. #67]. |

2127663

| Date | Action (or Inaction) |
|---|---|
| January 23, 2018 | Magistrate issues Report and Recommendation ("First R&R") for entry of monetary and terminating sanctions against Koi for pattern of discovery abuses [D.C. Doc. #70]. Mastroianni fails to advise Koi of the First R&R. |
| January 25, 2018 | Mastroianni fails to comply with January 19, 2018 order requiring him to submit a declaration addressing Koi's discovery failures. See D.C. Doc. #65. |
| February 6, 2018 | Mastroianni files an objection to the Magistrate's First R&R for entry of monetary and terminating sanctions against Koi [D.C. Doc. #73]. Mastroianni fails to advise Koi of the objection he files. |
| February 20, 2018 | SPI files response to Koi's objection to the Magistrate's First R&R [D.C. Doc. #77]. |
| February 27, 2018 | SPI files a third motion to compel production of documents [D.C. Doc. #81]. Mastroianni fails to oppose the third motion to compel and never advises Koi of the third motion to compel. |
| March 7, 2018 | Magistrate grants SPI's third motion to compel in part [D.C. Doc. #82]. Magistrate rules: "Inasmuch as Defendant was continuing its pattern of refusing to participate in discovery or to honor its obligations to meet and confer as required by the Local Rules and this Court's Procedures, the Court granted the ex parte application. Plaintiff timely filed its motion to compel [Dkt 66]. Defendant did not oppose the motion. Pursuant to Local Rule 7-12, the Court may deem failure to oppose a motion to be consent to the granting of the motion. The Court has reviewed Plaintiff's motion to compel and based on Defendants' failure to properly (1) respond to discovery, (2) meet and confer, and (3) oppose the instant motion, grants the motion in part." *Id.* Mastroianni fails to advise Koi of this order. |
| March 7, 2018 | Magistrate orders Koi to produce documents no later than March 15, 2018, and rules that "Defendant's Responses to Plaintiff's Requests for Admission were not timely served" and that "[i]n light of Defendant's failure to timely serve and to oppose this motion seeking to have those RFAs admitted, they are deemed admitted as to any facts (not legal argument or conclusion) set forth therein." [D.C. Doc. #82]. Mastroianni fails to advise Koi of this order. |
| March 15, 2018 | Mastroianni fails to timely produce documents as required in the Magistrate's order dated March 7, 2018 [D.C. Doc. #82]. |
| March 19, 2018 | SPI files a motion for summary judgment [D.C. Doc. #85]; corrected motion filed March 28, 2018 [D.C. Doc. #89]. |
| April 17, 2018 | Mastroianni files an opposition to SPI's motion for summary judgment and declarations in support [D.C. Doc. ##91, 92, 93, 94]. Importantly, Mastroianni never advises Koi, Jeremy Husk, or Kathy Peterson that SPI had filed a motion for summary judgment, and lied to them both as to the purpose of the declarations that they signed, stating via email that the declarations were meant to be filed in support of a motion to dismiss Mastroianni was working on [D.C. Doc. ##91 and 92]. |
| April 19, 2018 | Magistrate grants to SPI an award of attorneys' fees in the amount of $21,886.60 to be paid within 21 days of date of the order [D.C. Doc. #96] (the "Attorney Fee Award"). |

| Date | Action (or Inaction) |
|---|---|
| | Mastroianni fails to advise Koi of the attorney fee award in favor of SPI; accordingly, Koi does not pay the attorney fee award. |
| May 15, 2018 | SPI files a motion to enforce Magistrate order dated April 19, 2018 regarding award of attorney fees [D.C. Doc. #100]. Mastroianni fails to advise Koi of this motion. |
| May 17, 2018 | District Court enters Order declining to adopt Magistrate's First R&R but imposing monetary sanctions in the amount of $250,000.00 jointly and severally to Mastroianni and Koi, to be paid no later than July 16, 2018 [D.C. Doc. #102] (the "Criminal Sanction Order"). The Criminal Sanction Order also advises that if Koi fails to obey another order, the District Court will impose terminating sanctions against Koi. |
| May 17, 2018 | Mastroianni fails to advise Koi of the Criminal Sanction Order. |
| June 15, 2018 | Without advising Koi, Mastroianni files a notice of appeal of Criminal Sanction Order - no stay of proceedings requested [D.C. Doc. #105]. 9th Cir. Case No. 18-55798. |
| July 16, 2018 | Because of Mastroianni's failure to disclose, Koi fails to pay the $250,000.00 sanction as ordered by Court in the Criminal Sanction Order. |
| July 27, 2018 | Order of District Court imposing terminating sanctions against Koi for failure to pay the $250,000 sanction [D.C. Doc. #111]. Koi's answer is stricken, District Court instructs Clerk to enter default, and instructs SPI to file a motion for default judgment. |
| July 27, 2018 | Mastroianni fails to advise Koi of the imposition of terminating sanctions. |
| August 10, 2018 | Koi's default entered [D.C. Doc. #112]. Mastroianni fails to advise Koi accordingly. |
| August 20, 2018 | SPI files motion for default judgment [D.C. Doc. #113]. Mastroianni fails to advise Koi. |
| August 27, 2018 | Mastroianni fails to oppose SPI's motion for default judgment. |
| September 17, 2018 | 9th Circuit issues Order finding that the $250,000.00 sanction award to be a punitive fine constituting a criminal contempt order that is immediately appealable. *Bingman v. Ward*, 100 F.3d 653, 655-56 (9th Cir. 1996) (holding criminal contempt orders are appealable when entered). See D.C. Doc. #115 (copy of order filed in 9th Cir. Case No. 18-55798). |
| October 4, 2018 | District Court enters Default Judgment against Koi awarding judgment in the amount of $5,266,380.68 [D.C. Doc. #116] (the "Default Judgment"). Mastroianni fails to advise Koi of entry of the Default Judgment. |
| October 18, 2018 | SPI files a motion for exceptional case determination and attorney's fees [D.C. Doc. #117]. Mastroianni fails to advise Koi. |
| October 30, 2018 | Abstracts of judgment issued in favor of SPI for Attorney Fee Award and Default Judgment [D.C. Doc. ##119, 120]. Mastroianni fails to advise Koi. |
| November 2, 2018 | Mastroianni files a notice of appeal of the Default Judgment [D.C. Doc. #121]. 9th Cir. Case No. 18-56478, consolidated with prior appeal of Criminal Sanction Award. |
| November 2, 2018 | Mastroianni fails to advise Koi of his appeal of the Default Judgment. |
| November 13, 2018 | Jeremy Husk, Executive Vice President of Koi, sends text message to Mastroianni, stating Koi received mail indicating SPI had a "$5M+ lien" against Koi. Mastroianni responds: |

10

2127663

| Date | Action (or Inaction) |
|------|----------------------|
| November 13, 2018 | "This was issued in error and I've already asked the court of Appel [sic] to vacate it.  It indicated it would.  I'll send you the order when we get it.  I'll review and update you tomorrow. Its strategic nonsense that was obtained without notice to us." |
| November 21, 2018 | District Court issues writs of execution regarding Attorney Fee Award and Default Judgment [D.C. Doc. ##126, 127].  Mastroianni fails to advise Koi of the writs of execution. |
| November 26, 2018 | Mastroianni files an emergency motion in the 9th Circuit to stay District Court proceedings pending appeal of the Default Judgment.  See 9th Cir. Case No. 18-55798, Doc. #12. |
| November 28, 2018 | 9th Circuit issues order granting a temporary stay of the District Court proceedings, ordering Koi to supplement its motion for stay pending appeal with documentation supporting its claim that enforcement of the Default Judgment will cause it irreparable harm; 9th Circuit also temporarily stays the writs of execution issued by the District Court [D.C. Doc. #128]. |
| November 30, 2018 | Jeremy Husk sends text message to Mastroianni, stating: |
| November 30, 2018 | "Hi Doug – I just got an email from our bank that they have been notified of the lien Strategic filed. Would it be possible for us to jump on a call with them to discuss what is going on?"  Mastroianni responds: |
| November 30, 2018 | "Yeah. Can you send me the letter and who I should contact there. **The court has already vacated the lien**." |
| December 11, 2018 | Koi receives notice of default from Wells Fargo Trade Capital Services, Inc., showing the lien was not vacated as Mastroianni had told Koi (discussed more fully below, ¶¶24(h)-(j)). |
| December 12, 2018 | Koi terminates Mastroianni's representation, hiring Buchalter, APC to replace him. Buchalter ultimately did not continue in its representation of Koi. |
| December 19, 2018 | 9th Circuit enters Order granting Koi's motion to stay execution of Default Judgment and further District Court proceedings pending appeal [D.C. Doc. #129]. |
| December 22, 2018 | Koi hires Brutzkus Gubner to replace Mastroianni as counsel of record. |
| January 16, 2019 | Koi files motion for limited remand to present motion to vacate Default Judgment to District Court under Rule 60(b) of the Federal Rules of Civil Procedure.  See 9th Cir. Case No. 18-55798, Doc. #35. |
| January 22, 2019 | 9th Circuit grants Koi's motion for limited remand.  See 9th Cir. Case No. 18-55798, Doc. #39. |
| January 22, 2019 | Koi files *Notice of Motion and Motion to Vacate Default Judgment* [D.C. Doc. #134, corrected version D.C. Doc. #135] (the "Motion to Vacate"). |
| January 25, 2019 | Koi forced to seek bankruptcy protection, files voluntary chapter 11 petition.  Bankr. Case No. 2:19-bk-10762-NB (C.D. Cal.). See D.C. Doc. #141. |
| February 15, 2019 | Koi obtains relief from the automatic stay of 11 U.S.C. § 362 to allow District Court to consider and rule on Motion to Vacate.  See D.C. Doc. #149. |

11

| Date | Action (or Inaction) |
|---|---|
| April 22, 2019 | Magistrate issues Report and Recommendation regarding Motion to Vacate, recommending denial of Koi's motion based in part on Koi's failure to meaningfully participate in discovery during the course of the litigation (due to Mastroianni's failures as Koi's counsel) [D.C. Doc. #158] (the "Second R&R"). |
| May 7, 2019 | Koi files objections to the Second R&R [D.C. Doc. #160]. |
| May 21, 2019 | SPI files a response to Koi's objections to the Second R&R [D.C. Doc. #161]. |
| June 11, 2019 | District Court enters order adopting in full the Second R&R and denying Koi's Motion to Vacate [D.C. Doc. #162] (the "Order Denying Motion to Vacate"). |
| June 12, 2019 | Koi files notice of appeal of the Order Denying Motion to Vacate [D.C. Doc. #163], commencing Ninth Cir. Case No. 19-55678. |

23.     During the entire course of Defendants' representation of Koi, Defendants kept Koi in the dark as to the true status of the litigation.  When Koi inquired as to the status of the SPI Litigation, Mastroianni advised Koi at the commencement of the litigation that Koi would ultimately prevail, and during the litigation, repeatedly advised Koi that the matter was progressing without issues.

24.     Not only did Defendants fail to disclose Mastroianni's repeated dilatory actions despite receiving numerous adverse Magistrate and District Court orders, but Mastroianni affirmatively misled Koi as to litigation matters, including:

a.     After Koi received a copy of the complaint, Mastroianni periodically would request information, or would indicate that a declaration was required.  He did not routinely send over copies of all pleadings filed, or correspondence.  Koi never received any dispositive motion filed by SPI in the litigation.

b.     Mastroianni and Marron never advised Koi that they had failed to timely file an answer or that the District Court had issued an order to show cause.

c.     Defendants never advised Koi that he had failed to participate in the Rule 26 meeting with SPI's counsel.  It was only recently that Koi discovered that Mastroianni did not participate in preparing a joint report for a Rule 26(f) conference and that SPI had sought sanctions for Mastroianni's failures on multiple occasions; that Mastroianni had requested an extension of that conference in a pleading in which he told the District Court that he had been

2127663

frequently absent from the office for medical reasons and that no one at Marron had taken

over the handling of the case, or even calendared the date for the conference. However,

Mastroianni never told Koi that he was frequently absent from the office, that he had medical

issues, or that any such issues were interfering with his ability to defend the case. Nor did he

tell Koi that he was going to assign the SPI matter to someone else to be responsible for the

litigation. More significantly he never told Koi that no one was handling the case. In

addition, Mastroianni never advised Koi that (a) he had failed to participate in a joint meeting

of counsel, (b) he had not appeared for a hearing with the Magistrate; (c) the Magistrate had

warned him about his conduct, as SPI alleged occurred in this case.

        d.      In or about June of 2017, Mastroianni advised Koi that SPI requested certain

documents in discovery. Koi conducted a search for records, gathered those documents that it

found that were responsive to the documents sought by Mastroianni and gave them to

Mastroianni. Months later in November 2017, Mastroianni advised Koi that he needed a

declaration in connection with that discovery. The cover page of the declaration, as sent to

Koi, read as follows: "Declaration of Jeremy Husk." Unbeknownst to Koi, Mastroianni or

someone on his behalf at the Bloom Firm, changed the cover page to read as follows:

"Declaration of Jeremy Husk in Response to the Court's October 3, 2017 Order and in

Opposition to Motion for Terminating Sanctions." It was only recently that Koi discovered

that the cover page on the declaration that was sent to Koi at the time was different than what

was actually used and filed with the District Court. At no relevant time herein did

Mastroianni or any other Defendant inform Koi that SPI filed a motion for terminating

sanctions. None of the Defendants provided Koi a copy of the terminating sanctions motion,

nor did they advise Koi that the declaration from Mr. Husk was in opposition to said motion.

        e.      In April 2018, Mastroianni asked Koi's chief executive officer, Kathy

Peterson, and Koi's then executive vice president of operations (now chief financial officer).

Jeremy Husk, to sign declarations that addressed the substantive trademark dispute, including

that Koi made little profit on the KOI SAPPHIRE line. The declarations provided came

without caption pages. In fact, Mastroianni ended up using these declarations as Koi's

opposition to SPI's pending motion for summary judgment.  Mastroianni never advised Kathy Peterson or Jeremy Husk that such a motion had been filed, let alone provide copies of the filing to Koi.

f.    Moreover, Mastroianni never advised Koi that a sanctions motion had been filed by SPI nor did he advise Koi that the Magistrate had issued the Attorney Fee Award, which imposed discovery sanctions on Koi.  Nor did Mastroianni advise Koi of the court's Criminal Sanction Order, requiring payment of $250,000.00.  In addition, Mastroianni never advised Koi that he had filed an appeal of the Criminal Sanction Order.

g.    In September 2018, Mastroianni emailed Koi a copy of a status report, prompted by a request from Don Thornburgh, the attorney who files Koi's trademarks. Mastroianni responded by stating "We have filed an appeal from a **discovery order** in the District Court proceedings and nothing is happening there either for the time being." Mastroianni did not identify what the issue was on appeal or what the substance of the order contained. He further failed to advise Koi or Don Thornburgh that his reference to a "discovery order" was, in fact, the Criminal Sanction Order imposing $250,000.00 in sanctions against Koi.

h.    In or around November 2018, Koi received notice of the recorded lien related to SPI's Default Judgment from the county clerk's office via U.S. Mail.  On November 13, 2018, Koi contacted Mastroianni via text message to advise him of what they received, and asked him to review the issue as soon as possible, thinking it must be a mistake and not understanding why this had happened. Mastroianni responded by advising Koi that the levy was issued in error, that he had already asked the 9th Circuit to vacate it, and that the 9th Circuit had indicated that it would do so. These were affirmative misrepresentations made by Mastroianni to Koi.

i.    In November 2018, Koi also received notice from a representative of its lender, Wells Fargo Trade Capital Services, Inc. ("Wells Fargo") that SPI was attempting to levy on Koi's bank accounts with an over $5 million dollar lien.  On November 30, 2018, Koi contacted Mastroianni via text message after receiving information from a representative

14

2127663

of Wells Fargo they had received notification of the lien. In this exchange, Mastroianni in writing indicated that the 9th Circuit had already vacated the lien against Koi, another affirmative misrepresentation.

        j.      On December 11, 2018, Koi was advised by Wells Fargo personnel that the Default Judgment was still in existence and that the resulting lien constituted a default under Koi's credit agreement with Wells Fargo. Koi immediately reached out to Mastroianni again by text message, informing him of this critical issue.  Koi also sent Mastroianni a link Koi received from Wells Fargo to a press release regarding the Criminal Sanction Order that had been issued against both Mastroianni and Koi.  This was the very first time Koi received information about the Criminal Sanction Order issued months beforehand and the true status of the case.

      25.      Koi subsequently learned that Mastroianni had lied to or concealed from Koi all substantive matters that had gone on in the SPI Litigation, and that Mastroianni had failed to disclose all of his numerous failings and the Court orders that addressed his conduct over the course of the litigation.  Neither Marron nor Bloom made disclosures to Koi advising Koi of the misstatements made by Mastroianni.

      26.      As a result of Mastroianni's sheer incompetence and malfeasance (and Marron and Bloom's failure to properly supervise Mastroianni or provide the full and fair disclosure Koi was entitled to), the District Court entered monetary sanctions against Koi and ultimately the Default Judgment against Koi, even though Koi was under the impression that the case was progressing on the merits.

      27.      Faced with an over $5 million judgment and a levy upon its bank account without being afforded its day in court, on January 25, 2019 (the "Petition Date") Koi had no choice but to file a voluntary chapter 11 petition for relief, commencing its bankruptcy case.  Koi continues to operate as a debtor in possession.  Koi has incurred substantial costs as a result of its efforts to vacate the Default Judgment, both at the District Court and via its appeals to the Ninth Circuit, as well as its bankruptcy filing, all necessitated by Defendants' misconduct.

/ / /

28.     For their part, the two law firms, Marron and Bloom, failed to oversee the work of Mastroianni.  Their failures were inexcusable, as the orders of the District Court and motions filed by SPI were served first on the Marron firm and then subsequently upon the Bloom firm.  At no time was Koi ever informed by any of the Defendants of the numerous missed deadlines.  At no time was Koi ever informed timely of the various sanctions imposed by the Magistrate and District Court.  At no time was Koi ever informed of the motion for default judgment or resulting Default Judgment until it was too late.  Rather, upon information and belief, Marron and Bloom knew something was wrong but failed to timely advise Koi of Mastroianni's improper conduct (and they failed to take steps to rectify the damage done by Mastroianni).

29.     Marron and Bloom were not overseeing Mastroianni on a blank slate.  On information and belief, clients had complained about Mastroianni's performance including his (i) failure to inform clients of the receipt of discovery requests, (ii) failure to timely respond to discovery, (iii) failure to respond to motions to compel, failing to respond to motions for sanctions, (iv) failure to file case management statements, failing to appear for hearings, (v) failure to coordinate depositions, (vi) failure to keep clients reasonably informed of significant developments in a matter in which Mastroianni had agreed to provide services, (vii) misrepresentation of the status of cases including lying to clients about outstanding discovery and sanctions motions, (vii) allowing the dismissal of actions for want of prosecution, (viii) misappropriation of funds, and (ix) commingling and withdrawal of funds in client trust accounts.  See, Exhibit A, Notice of Disciplinary Charges, State Bar Court, Hearing Dept., Los Angeles (Dec. 26, 2018).  The State Bar charging documents identify conduct of a similar nature to the allegations presented here that, as alleged by the State Bar occurred, at least in part, during the period of time that Mastroianni was at the Marron and then the Bloom firms.  The warning signs were there for Marron and Bloom, but they were ignored.

30.     In fact, even if those complaints were received after Mastroianni and these Defendants began work for Koi, those complaints should have put Defendants on inquiry notice that Mastroianni may have performed similar acts with respect to Koi.  A cursory investigation by either Marron or Bloom would have revealed said misconduct, which should have been immediately disclosed to Koi so that it could have taken steps to avoid the default entered against it.

**FIRST CLAIM FOR RELIEF–INTENTIONAL BREACH OF FIDUCIARY DUTY**

**(AGAINST MASTROIANNI)**

31.     Koi realleges Paragraphs 1-30 above as if set forth in full here.

32.     As described in detail above, Mastroianni was counsel for Koi in the SPI Litigation

and owed a fiduciary duty to Koi to disclose all facts material to Mastroianni's representation of Koi.

33.     As set forth above, Mastroianni breached his fiduciary duty of disclosure to Koi by

not only failing to disclose material information regarding the SPI Litigation, but by making

affirmative misrepresentations to Koi regarding the status of the litigation.

34.     Mastroianni's intentional breaches of fiduciary duty were a substantial factor in

causing harm to Koi.

35.     As a result of Mastroianni's intentional breaches of fiduciary duty, Koi was damaged

in an amount in excess of $8,000,000 to be determined at trial.

**SECOND CLAIM FOR RELIEF–FRAUDULENT CONCEALMENT**

**(AGAINST MASTROIANNI)**

36.     Koi realleges Paragraphs 1-35 above as if set forth in full here.

37.     As described in detail above, Mastroianni concealed and suppressed material facts

relating to the SPI Litigation.

38.     As counsel for Koi, Mastroianni had a duty to disclose these facts to Koi.

39.     Mastroianni intentionally concealed and suppressed these facts with the intent to

defraud Koi.

40.     Koi was unaware of these facts and would not have acted as it did if it had known of

the concealed or suppressed facts.

41.     As a result of the concealment and suppression of these facts, Koi sustained damage

in an amount in excess of $8,000,000 to be determined at trial.

**THIRD CLAIM FOR RELIEF–BREACH OF FIDUCIARY DUTY**

**(AGAINST MARRON AND BLOOM)**

42.     Koi realleges Paragraphs 1-41 above as if set forth in full here.

43.     As a client of the Marron and then the Bloom firm, each owed Koi a fiduciary duty of

disclosure.

44.    As described in detail above, neither the Marron nor the Bloom firm disclosed to Koi material events relevant to the SPI Litigation.

45.    As a result of their failures to disclose, Koi sustained damage in an amount in excess of $8,000,000 to be determined at trial.

## FOURTH CLAIM FOR RELIEF–MALPRACTICE

### (AGAINST ALL DEFENDANTS)

46.    Koi realleges Paragraphs 1-45 above as if set forth in full here.

47.    At all times relevant and as identified above, the Defendants and each of them failed to exercise the level of skill, knowledge and care that a reasonably careful lawyer and law firm would use in similar circumstances.

48.    But for Defendants' failure to exercise the level of skill, knowledge, and care that a reasonably careful lawyer and law firm would use in similar circumstances, Koi was harmed.

49.    As a result of Defendants' malpractice, Koi sustained damage in an amount in excess of $8,000,000 to be determined at trial.

## FIFTH CLAIM FOR RELIEF–NEGLIGENT SUPERVISION

### (AGAINST MARRON AND BLOOM)

50.    Koi realleges Paragraphs 1-49 above as if set forth in full here.

51.    During the SPI Litigation, Mastroianni worked for the Marron law firm and then the Bloom law firm.

52.    As Mastroianni's employer, each of the law firms owed a duty to supervise Mastroianni.

53.    Upon information and belief, these law firms received orders from the court and/or briefs from opposing counsel that placed them on notice of Mastroianni's acts of malfeasance.

54.    The Marron and Bloom law firms knew or should have known that Mastroianni was not performing legal services competently for Koi in the SPI Litigation.

55.    The Marron and Bloom law firms failed to take steps to address Mastroianni's conduct.

2127663

56.     As a result thereof, Koi sustained damage in an amount in excess of $8,000,000 to be determined at trial.

### SIXTH CLAIM FOR RELIEF

### AVOIDANCE OF FRAUDULENT TRANSFER – CONSTRUCTIVE FRAUD

### (AGAINST MARRON)

**[11 U.S.C. § 544 and Cal. Civ. Code §§ 3439.04(a)(2) or 3439.05, and 3439.07]**

57.     Koi realleges Paragraphs 1-56 above as if set forth in full here.

58.     In the four years preceding the Petition Date, Koi made transfers to Marron totaling no less than $41,486.94, which transfers are listed in **Exhibit B** attached hereto and incorporated herein by this reference (the "Marron 4-Year Transfers").  Such transfers were made to Marron on account of its representation of Koi in the SPI Litigation.

59.     Each of the Marron 4-Year Transfers was made (a) without Koi receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when Koi was insolvent or as a result of which Koi became insolvent; or (ii), at a time that Koi was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with Koi was an unreasonably small capital; or (iii) at a time when Koi intended to incur, or believed or should reasonably have believed that Koi would incur, debts that would be beyond Koi's ability to pay as such debts matured.

60.     As detailed above, Marron performed no work, let alone competent work, for Koi during this period and Koi did not receive reasonably equivalent value for the payments it made to Marron.

61.     By virtue of the foregoing, the Marron 4-Year Transfers constituted avoidable transfers pursuant to 11 U.S.C. § 544 and California Civil Code §§ 3439.04(a)(2) or 3439.05, and 3439.07.

/ / /

/ / /

/ / /

/ / /

2127663

### SEVENTH CLAIM FOR RELIEF

### AVOIDANCE OF FRAUDULENT TRANSFER – CONSTRUCTIVE FRAUD

### (AGAINST MARRON)

### [11 U.S.C. § 548(a)(1)(B)]

62.    Koi realleges Paragraphs 1-61 above as if set forth in full here.

63.    In the two years preceding the Petition Date, Koi made transfers to Marron totaling no less than $15,075.64, which transfers are listed in **Exhibit C** attached hereto and incorporated herein by this reference (the "Marron 2-Year Transfers").  Such transfers were made to Marron on account of its representation of Koi in the SPI Litigation, and constitute a portion of the Marron 4-Year Transfers noted above.

64.    Each of the Marron 2-Year Transfers was made (a) without Koi receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when Koi was insolvent or as a result of which Koi became insolvent; or (ii), at a time that Koi was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with Koi was an unreasonably small capital; or (iii) at a time when Koi intended to incur, or believed or should reasonably have believed that Koi would incur, debts that would be beyond Koi's ability to pay as such debts matured.

65.    As detailed above, Marron performed no work, let alone competent work, for Koi during this period and Koi did not receive reasonably equivalent value for the payments it made to Marron.

66.    By virtue of the foregoing, the Marron 2-Year Transfers constituted avoidable transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

### EIGHTH CLAIM FOR RELIEF

### AVOIDANCE OF FRAUDULENT TRANSFER – CONSTRUCTIVE FRAUD

### (AGAINST BLOOM)

### [11 U.S.C. § 544 and Cal. Civ. Code §§ 3439.04(a)(2) or 3439.05, and 3439.07]

67.    Koi realleges Paragraphs 1-66 above as if set forth in full here.

68.    In the four years preceding the Petition Date, Koi made transfers to Bloom totaling no

2127663

less than $50,000, which transfers are listed in **Exhibit D** attached hereto and incorporated herein by this reference (the "Bloom Transfers"). Such transfers were made to Bloom on account of its representation of Koi in the SPI Litigation.

69.    Each of the Bloom Transfers was made (a) without Koi receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when Koi was insolvent or as a result of which Koi became insolvent; or (ii), at a time that Koi was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with Koi was an unreasonably small capital; or (iii) at a time when Koi intended to incur, or believed or should reasonably have believed that Koi would incur, debts that would be beyond Koi's ability to pay as such debts matured.

70.    As detailed above, Bloom performed no work, let alone competent work, for Koi during this period and Koi did not receive reasonably equivalent value for the payments it made to Bloom.

71.    By virtue of the foregoing, the Bloom Transfers constituted avoidable transfers pursuant to 11 U.S.C. § 544 and California Civil Code §§ 3439.04(a)(2) or 3439.05, and 3439.07.

## NINTH CLAIM FOR RELIEF

### AVOIDANCE OF FRAUDULENT TRANSFER – CONSTRUCTIVE FRAUD

### (AGAINST BLOOM)

### [11 U.S.C. § 548(a)(1)(B)]

72.    Koi realleges Paragraphs 1-71 above as if set forth in full here.

73.    In the two years preceding the Petition Date, Koi made the Bloom Transfers to Bloom shown in **Exhibit D**. As noted above, such transfers were made to Bloom on account of its representation of Koi in the SPI Litigation.

74.    Each of the Bloom Transfers was made (a) without Koi receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when Koi was insolvent or as a result of which Koi became insolvent; or (ii), at a time that Koi was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with Koi was an unreasonably small capital; or (iii) at a time when Koi intended to incur, or believed

1  or should reasonably have believed that Koi would incur, debts that would be beyond Koi's ability to

2  pay as such debts matured.

3      75.     As detailed above, Bloom performed no work, let alone competent work, for Koi

4  during this period and Koi did not receive reasonably equivalent value for the payments it made to

5  Bloom.

6      76.     By virtue of the foregoing, the Bloom Transfers constituted avoidable transfers

7  pursuant to 11 U.S.C. § 548(a)(1)(B).

8              **TENTH CLAIM FOR RELIEF**

9  **AVOIDANCE OF SUBSEQUENT FRAUDULENT TRANSFER – CONSTRUCTIVE FRAUD**

10              **(AGAINST MASTROIANNI)**

11     **[11 U.S.C. § 544 and Cal. Civ. Code §§ 3439.04(a)(2) or 3439.05, and 3439.07]**

12     77.     Koi realleges Paragraphs 1-76 above as if set forth in full here.

13     78.     On or about January 19, 2018 or thereafter, Koi is informed and believes that Bloom

14  transferred the sum of $22,821.56 to Mastroianni after he left Bloom (the "Balance Transfer"), and

15  that such sum represented the balance of the retainer Koi paid to Bloom (as part of the Bloom

16  Transfers discussed above).

17     79.     In the event Bloom made the Balance Transfer to Mastroianni, such transfer was

18  made (a) without Koi receiving a reasonably equivalent value in exchange for such transfer; and (i)

19  at a time when Koi was insolvent or as a result of which Koi became insolvent; or (ii), at a time that

20  Koi was engaged in a business or a transaction, or was about to engage in a business or a transaction,

21  for which any property remaining with Koi was an unreasonably small capital; or (iii) at a time when

22  Koi intended to incur, or believed or should reasonably have believed that Koi would incur, debts

23  that would be beyond Koi's ability to pay as such debts matured.

24     80.     As detailed above, Mastroianni performed no work, let alone competent work, for

25  Koi during this period and Koi did not receive reasonably equivalent value for the payments it made

26  to Bloom and subsequently to Mastroianni.

27     81.     By virtue of the foregoing, the Balance Transfer constituted an avoidable transfer

28  pursuant to 11 U.S.C. § 544 and California Civil Code §§ 3439.04(a)(2) or 3439.05, and 3439.07.

22

## ELEVENTH CLAIM FOR RELIEF

## AVOIDANCE OF SUBSEQUENT FRAUDULENT TRANSFER – CONSTRUCTIVE FRAUD

## (AGAINST MASTROIANNI)

### [11 U.S.C. § 548(a)(1)(B)]

82.    Koi realleges Paragraphs 1-81 above as if set forth in full here.

83.    On or about January 19, 2018 or thereafter, Koi is informed and believes that Bloom transferred the Balance Transfer to Mastroianni after he left Bloom, and that such sum represented the balance of the retainer Koi paid to Bloom (as part of the Bloom Transfers discussed above).

84.    In the event Bloom made the Balance Transfer to Mastroianni, such transfer was made (a) without Koi receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when Koi was insolvent or as a result of which Koi became insolvent; or (ii), at a time that Koi was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with Koi was an unreasonably small capital; or (iii) at a time when Koi intended to incur, or believed or should reasonably have believed that Koi would incur, debts that would be beyond Koi's ability to pay as such debts matured.

85.    As detailed above, Mastroianni performed no work, let alone competent work, for Koi during this period and Koi did not receive reasonably equivalent value for the payments it made to Bloom and subsequently to Mastroianni.

86.    By virtue of the foregoing, the Balance Transfer constituted an avoidable transfer pursuant to 11 U.S.C. § 548(a)(1)(B).

## TWELFTH CLAIM FOR RELIEF - RECOVERY OF AVOIDED TRANSFERS

## (AGAINST ALL DEFENDANTS)

### [11 U.S.C. §§ 544, 550 and Cal. Civ. Code § 3439.07]

87.    Koi realleges Paragraphs 1-86 above as if set forth in full here.

88.    By reason of the foregoing, Koi is entitled to recover the Marron 4-Year Transfers, the Marron 2-Year Transfers, the Bloom Transfers, and the Balance Transfer pursuant to §§ 544, 550(a)(1); and/or (2), and Civil Code § 3439.07.

23

2127663

### THIRTEENTH CLAIM FOR RELIEF

### TURNOVER OF PROPERTY OF THE ESTATE

### (AGAINST ALL DEFENDANTS)

### [11 U.S.C. § 542]

89.    Koi realleges Paragraphs 1-86 above as if set forth in full here.

90.    Koi paid the Marron 4-Year Transfers to Marron as an evergreen retainer (the "Marron Retainer"), based on the belief and agreement that Marron would competently represent Koi in connection with the SPI Litigation.  Marron failed to do so, as described in detail above, and Koi is informed that Marron wrongfully drew down on the Marron Retainer notwithstanding the fact that Marron failed to perform its duties to Koi and billed Koi for work that was never performed.

91.    The Marron Retainer is property of Koi's bankruptcy estate under 11 U.S.C. § 541.

92.    Similarly, Koi paid the Bloom Transfers to Bloom as an evergreen retainer (the "Bloom Retainer"), based on the belief and agreement that Bloom would competently represent Koi in connection with the SPI Litigation.  Bloom failed to do so, as described in detail above, and Koi is informed that Bloom wrongfully drew down on the Bloom Retainer notwithstanding the fact that Bloom failed to perform its duties to Koi and billed Koi for work that was never performed.

93.    The Bloom Retainer is property of Koi's bankruptcy estate under 11 U.S.C. § 541.

94.    Finally, and in the event Mastroianni is in possession of the balance of the Bloom Retainer in the amount of $22,821.56 (the "Balance"), such Balance is property of Koi's bankruptcy estate under 11 U.S.C. § 541 for the same reasons noted above.

95.    Accordingly, Koi is entitled to a judgment requiring Marron to turn over the Marron Retainer, requiring Bloom to turn over the Bloom Retainer, and requiring Mastroianni to turn over the Balance pursuant to 11 U.S.C. §542 for the benefit of the estate.

### PRAYER FOR RELIEF

**WHEREFORE**, Koi prays for judgment as follows:

1.    On the First Claim for Relief, for compensatory damages according to proof but in an amount exceeding $8,000,000, and exemplary damages to the extent provided for under the law;

2.    On the Second Claim for Relief, for compensatory damages according to proof but in

2127663

an amount exceeding $8,000,000, and exemplary damages to the extent provided for under the law;

3.      On the Third Claim for Relief, for compensatory damages according to proof but in an amount exceeding $8,000,000, and exemplary damages to the extent provided for under the law;

4.      On the Fourth Claim for Relief, for compensatory damages according to proof but in an amount exceeding $8,000,000;

5.      On the Fifth Claim for Relief, for compensatory damages according to proof but in an amount exceeding $8,000,000;

6.      On the Sixth Claim for Relief, for a judgment avoiding the Marron 4-Year Transfers in an amount no less than $41,486.94;

7.      On the Seventh Claim for Relief, for a judgment avoiding the Marron 2-Year Transfers in an amount no less than $15,075.64;[1]

8.      On the Eighth Claim for relief, for a judgment avoiding the Bloom Transfers in an amount no less than $50,000;

9.      On the Ninth Claim for Relief, for a judgment avoiding the Bloom Transfers in an amount no less than $50,000;

10.     On the Tenth Claim for Relief, for a judgment avoiding the Balance Transfer in an amount no less than $22,821.56;

11.     On the Eleventh Claim for Relief, for a judgment avoiding the Balance Transfer in an amount no less than $22,821.56;

12.     On the Twelfth Claim for Relief, for a judgment recovering the Marron 4-Year Transfers, the Marron 2-Year Transfers, the Bloom Transfers, and the Balance Transfer for the benefit of Koi's bankruptcy estate;

13.     On the Thirteenth Claim for Relief, for turnover of the Marron Retainer, Bloom Retainer, and Balance for the benefit of Koi's bankruptcy estate;

14.     On All Claims for Relief:

        a.   For interest on all claims as provided by law;

---

[1] Koi does not seek duplicative recovery from the same defendant; each claim for relief represents a distinct legal theory under which Koi is entitled to relief.

b.   For attorneys' fees, costs and expenses incurred herein, as allowed by law; and

c.   For such other and further relief as the Court may deem just and proper.

DATED:  July 1, 2019                          BRUTZKUS GUBNER


By:  /s/ Susan K. Seflin
                Jason B. Komorsky
                Susan K. Seflin
                Jessica L. Bagdanov
Attorneys for Plaintiff and Chapter 11 Debtor
and Debtor in Possession

26

2127663

1  STATE BAR OF CALIFORNIA
   OFFICE OF CHIEF TRIAL COUNSEL
2  MELANIE J. LAWRENCE, No. 230102
   INTERIM CHIEF TRIAL COUNSEL
3  MIA R. ELLIS, No. 228226
   ASSISTANT CHIEF TRIAL COUNSEL
4  ANAND KUMAR, No. 261592
   SUPERVISING ATTORNEY
5  ELI MORGENSTERN, No. 190560
   SENIOR TRIAL COUNSEL
6  CHRISTINA MITCHELL, No. 245120
   DEPUTY TRIAL COUNSEL
7  845 South Figueroa Street
   Los Angeles, California 90017-2515
8  Telephone: (213) 765-1077

9

**PUBLIC MATTER**

**FILED**

**DEC 2 6 2018**

STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES

10             STATE BAR COURT

11        HEARING DEPARTMENT - LOS ANGELES

12

13  In the Matter of:                    )   Case Nos. 17-O-03416, 17-O-05972,
                                         )          17-O-06077
14  ALBERT DOUGLAS MASTROIANNI,          )
    No. 150438,                          )
15                                       )   NOTICE OF DISCIPLINARY CHARGES
                                         )
16  A Member of the State Bar.           )

17

18           **NOTICE - FAILURE TO RESPOND!**

19  **IF YOU FAIL TO FILE A WRITTEN ANSWER TO THIS NOTICE
    WITHIN 20 DAYS AFTER SERVICE, OR IF YOU FAIL TO APPEAR AT
20  THE STATE BAR COURT TRIAL:**

21  **(1)  YOUR DEFAULT WILL BE ENTERED;**
    **(2)  YOUR STATUS WILL BE CHANGED TO INACTIVE AND YOU
22         WILL NOT BE PERMITTED TO PRACTICE LAW;**
    **(3)  YOU WILL NOT BE PERMITTED TO PARTICIPATE FURTHER IN
23         THESE PROCEEDINGS UNLESS YOU MAKE A TIMELY MOTION
           AND THE DEFAULT IS SET ASIDE, AND;**
24  **(4)  YOU SHALL BE SUBJECT TO ADDITIONAL DISCIPLINE.
           SPECIFICALLY, IF YOU FAIL TO TIMELY MOVE TO SET ASIDE
25         OR VACATE YOUR DEFAULT, THIS COURT WILL ENTER AN
           ORDER RECOMMENDING YOUR DISBARMENT WITHOUT
26         FURTHER HEARING OR PROCEEDING. SEE RULE 5.80 ET SEQ.,
           RULES OF PROCEDURE OF THE STATE BAR OF CALIFORNIA.**

27

28

kwiktag®    241 070 899

**Exhibit A_001**

1    The State Bar of California alleges:

2                                    <u>JURISDICTION</u>

3        1.   Albert Douglas Mastroianni ("respondent") was admitted to the practice of law in the

4    State of California on December 4, 1990, was a member at all times pertinent to these charges,

5    and is currently a member of the State Bar of California.

6

7                                    <u>COUNT ONE</u>

8                              Case No. 17-O-03416
                Rules of Professional Conduct, former Rule 4-100(B)(1)
9                      [Failure to Notify of Receipt of Client Funds]

10        2.   On or about August 25, 2015 respondent received on behalf of respondent's client,

11   Maisha Garner, $22,923.04 in settlement funds from the settlement administrator of the

12   NuvaRing Multidistrict Litigation, Superior Court of New Jersey, Bergen County, case number

13   BER-L-3081-09.  Respondent failed to notify the client of respondent's receipt of funds on the

14   client's behalf, in willful violation of the Rules of Professional Conduct, former rule

15        4-100(B)(1).

16

17                                    <u>COUNT TWO</u>

18                              Case No. 17-O-03416
                Rules of Professional Conduct, former Rule 4-100(A)
19                   [Failure to Maintain Client Funds in Trust Account]

20        3.   On or about August 25, 2015, respondent received on behalf of respondent's client,

21   Maisha Garner, $22,923.04 in settlement funds from the settlement administrator of the

22   NuvaRing Multidistrict Litigation, Superior Court of New Jersey, Bergen County, case number

23   BER-L-3081-09, which was deposited into respondent's client trust account at U.S. Bank,

24   account number *-***-****-5353[1], on behalf of the client.  Of this sum, the client and the

25   lienholder, Atlas Legal Funding, were collectively entitled to $12,895.88.  Respondent failed to

26

27   _____

28   [1] Only the last four digits of the account number are identified for privacy reasons.

**Exhibit A_002**

1    maintain a balance of $12,895.88 on behalf of the client in respondent's client trust account, in

2    willful violation of the Rules of Professional Conduct, former rule 4-100(A).

3

4                             <u>COUNT THREE</u>

5                          Case No. 17-O-03416
              Business and Professions Code section 6106

6                  [Moral Turpitude - Misappropriation]

7        4.   On or about August 25, 2015, respondent received on behalf of respondent's client,

8    Maisha Garner, $22,923.04 in settlement funds from the settlement administrator of the

9    NuvaRing Multidistrict Litigation, Superior Court of New Jersey, Bergen County, case number

10    BER-L-3081-09, which was deposited into respondent's client trust account at U.S. Bank,

11    account number *-***-****-5353, on behalf of the client.

12        5.   Between on or about September 10, 2015, and on or about May 16, 2016, respondent

13    willfully and intentionally misappropriated $9,895.88 that the respondent's client and the

14    lienholder, Atlas Legal Funding, were collectively entitled to receive.  Respondent thereby

15    committed an act involving moral turpitude, dishonesty or corruption in willful violation of

16    Business and Professions Code section 6106.

17        6.   A violation of section 6106 may result from intentional conduct or grossly negligent

18    conduct.  Respondent is charged with committing an intentional misappropriation.  However,

19    should the evidence at trial demonstrate that respondent misappropriated funds as a result of

20    grossly negligent conduct, respondent must still be found culpable of violating section 6106

21    because misappropriation through gross negligence is a lesser included offense of intentional

22    misappropriation.

23    ///

24    ///

25    ///

26    ///

27    ///

28

**Exhibit A_003**

## COUNT FOUR

Case No. 17-O-03416
Rules of Professional Conduct, former Rule 4-100(B)(4)
[Failure to Pay Client Funds Promptly]

7.   On or about August 25, 2015, respondent received on behalf of respondent's client,
Maisha Garner, $22,923.04 in settlement funds from the settlement administrator of the
NuvaRing Multidistrict Litigation, Superior Court of New Jersey, Bergen County, case number
BER-L-3081-09.  Of this sum, the client and the lienholder, Atlas Legal Funding, were
collectively entitled to $12,895.88.  On or about September 10, 2015, respondent gave
respondent's client a cashier's check for $3,000.  On or about November 28, 2016, respondent's
client requested respondent pay out the remainder of the settlement funds that she was entitled to
receive. On or about December 12, 2016, the lienholder, Atlas Legal Funding, requested
respondent pay out its portion of the funds. On or about January 25, 2018, respondent paid
respondent's client $1,575.75.   To date, respondent has failed to pay promptly, as requested by
respondent's client and the lienholder, any portion of the remaining $8,320.13 in respondent's
possession in willful violation of the Rules of Professional Conduct, former rule 4-100(B)(4).

## COUNT FIVE

Case No. 17-O-03416
Business and Professions Code section 6106
[Moral Turpitude - Misrepresentation]

8.   On or about September 9, 2015, respondent stated in writing to Maisha Garner that he
would advance her $3,000 of her settlement funds, implying that he had not yet received her
settlement funds.  In fact, respondent knew that he had received the settlement funds on August
25, 2015. When he made the statement that he would advance Maisha Garner $3,000 of her
settlement funds, respondent knew that statement was false and misleading.  Respondent thereby
committed an act involving moral turpitude, dishonesty or corruption in willful violation of
Business and Professions Code section 6106.

**Exhibit A_004**

9.  A violation of section 6106 may result from intentional conduct or grossly negligent conduct.  Respondent is charged with committing intentional misrepresentation.  However, should the evidence at trial demonstrate that respondent committed misrepresentation as a result of gross negligence, respondent must still be found culpable of violating section 6106 because misrepresentation through gross negligence is a lesser included offense of intentional misrepresentation.

**COUNT SIX**

Case No.  17-O-03416
Rules of Professional Conduct, former Rule 4-100(B)(3)
[Failure to Render Accounts of Client Funds]

10. On or about August 23, 2015, respondent received on behalf of respondent's client, Maisha Garner, settlement funds from the settlement administrator of the NuvaRing Multidistrict Litigation, Superior Court of New Jersey, Bergen County, case number BER-L-3081-09. Respondent thereafter failed to render an appropriate accounting to the client regarding those funds following respondent's promise to furnish an accounting and distribution of the settlement funds on or about December 2, 2016, in willful violation of the Rules of Professional Conduct, former rule 4-100(B)(3).

**COUNT SEVEN**

Case No.  17-O-05972
Rules of Professional Conduct, former Rule 3-110(A)
[Failure to Perform with Competence]

11. On or about April 2, 2015, Richard Santos employed respondent to perform legal services, namely to represent Richard Santos in *Richard Santos v. Nancy Rich, State of California*, Riverside Superior Court case number RIC 1501091, a personal injury action in which respondent intentionally, recklessly, or repeatedly failed to perform with competence, in willful violation of Rules of Professional Conduct, former rule 3-110(A), by the following:

**Exhibit A_005**

A. Failing to respond to Form Interrogatories, Special Interrogatories and Request for Production of Documents propounded by the opposing party by on or about May 6, 2015;

B. Failing to respond to the State of California's Motion to Compel Responses to Interrogatories and Request for Production of Documents by on or about August 25, 2015;

C. Failing to respond to the State of California's Motion for Sanctions by on or about December 17, 2015;

D. Failing to file Case Management Statements by on or about December 17, 2015; and

E. Failing to appear at a Case Management Conference on or about August 25, 2015.

## COUNT EIGHT

Case No. 17-O-05972
Business and Professions Code section 6068(m)
[Failure to Inform Client of Significant Developments]

12. Respondent failed to keep respondent's client, Richard Santos, reasonably informed of significant developments in a matter in which respondent had agreed to provide legal services, in willful violation of Business and Professions Code section 6068(m), by failing to inform the client of the following:

A. Mr. Santos was served, through respondent, with Form Interrogatories, Special Interrogatories and a Request for Production of Documents by the State of California on or about February 27, 2015;

B. Mr. Santos was served, through respondent, with the State of California's Motion to Compel Responses to Interrogatories and Request for Production of Documents on or about June 4, 2015;

C. Mr. Santos was served, through respondent, with the State of California's Motion for Sanctions on or about October 26, 2015;

-6-

Exhibit A_006

1      D. The State of California's Motion to Compel Responses to Interrogatories and

2           Request for Production of Documents was granted on or about August 25, 2015;

3      E. The State of California's Motion for Sanctions was granted on or about January

4           13, 2016;

5      F. Respondent filed a request to dismiss the lawsuit entitled *Richard Santos v. Nancy*

6           *Rich, State of California*, Riverside Superior Court case number RIC 1501091 on

7           or about March 14, 2016; and

8      G. The Court dismissed the lawsuit on or about March 14, 2016.

9

10                        <u>COUNT NINE</u>

11                   Case No. 17-O-05972
Rules of Professional Conduct, former Rule 3-700(A)(2)

12              [Improper Withdrawal from Employment]

13      13. Respondent failed, upon termination of employment, to take reasonable steps to avoid

14 reasonably foreseeable prejudice to respondent's client, Richard Santos, by constructively

15 terminating respondent's employment on or about March 14, 2016, when he filed a request for

16 dismissal of the client's civil action without prejudice, without the client's knowledge, authority

17 and consent, and thereafter failing to inform the client that respondent was withdrawing from

18 employment, in willful violation of the Rules of Professional Conduct, former rule 3-700(A)(2).

19

20                        <u>COUNT TEN</u>

21                   Case No. 17-O-05972
Business and Professions Code section 6068(i)

22           [Failure to Cooperate in State Bar Investigation]

23      14. Respondent failed to cooperate and participate in a disciplinary investigation pending

24 against respondent by failing to provide a substantive response to the State Bar's letters of

25 December 8, 2017, February 7, 2018, August 27, 2018, and September 26, 2018, which

26 respondent received, that requested respondent's response to the allegations of misconduct being

27

28

**Exhibit A_007**

1    investigated in State Bar Court case no.17-O-05972, in willful violation of Business and

2    Professions Code section 6068(i).

3

4                              COUNT ELEVEN

5                              Case No. 17-O-06077
                     Rules of Professional Conduct, former Rule 4-100(A)

6                    [Failure to Maintain Client Funds in Trust Account]

7         15. On or about November 23, 2015, respondent received on behalf of respondent's

8    client, Kymberly Wulfe, a settlement check from 21st Century Insurance.  On or about

9    November 23, 2015, respondent deposited the $25,000 into respondent's client trust account at

10   U.S. Bank,  account number *-***-****-5353, on behalf of the Kymberly Wulfe.  Of this sum,

11   the client was entitled to $16,666.67.  Respondent failed to maintain a balance of $16,666.67 on

12   behalf of the client in respondent's client trust account, in willful violation of the Rules of

13   Professional Conduct, former rule 4-100(A).

14

15                              COUNT TWELVE

16                              Case No. 17-O-06077
                     Business and Professions Code section 6106

17                   [Moral Turpitude - Misappropriation]

18        16. On or about November 23, 2015, respondent received on behalf of respondent's

19   client, Kymberly Wulfe, a settlement check from 21st Century Insurance.

20        17. On or about November 23, 2015, respondent deposited the $25,000 check into

21   respondent's client trust account at U.S. Bank, account number *-***-****-5353, on behalf of

22   Kymberly Wulfe.

23        18. Between on or about December 2, 2015, through on or about May 16, 2016,

24   respondent willfully and intentionally misappropriated $16,666.67 that the respondent's client

25   was entitled to receive.  Respondent thereby committed an act involving moral turpitude,

26   dishonesty or corruption in willful violation of Business and Professions Code section 6106.

27

28
                                        -8-

**Exhibit A_008**

19. A violation of section 6106 may result from intentional conduct or grossly negligent conduct. Respondent is charged with committing an intentional misappropriation. However, should the evidence at trial demonstrate that respondent misappropriated funds as a result of grossly negligent conduct, respondent must still be found culpable of violating section 6106 because misappropriation through gross negligence is a lesser included offense of intentional misappropriation.

## COUNT THIRTEEN

Case No. 17-O-06077
Rules of Professional Conduct, former Rule 4-100(B)(4)
[Failure to Pay Client Funds Promptly]

20. On or about November 23, 2015, respondent received on behalf of respondent's client, Kymberly Wulfe, a settlement check from 21st Century Insurance. Of this sum, the client was entitled to $16,666.67. On or about August 22, 2017, the client requested that respondent provide the settlement funds to her new counsel. Respondent did not provide Kymberly Wulfe's new counsel with the settlement funds of $16,666.67 until on or about May 2018, in willful violation of the Rules of Professional Conduct, former rule 4-100(B)(4).

## COUNT FOURTEEN

Case No. 17-O-06077
Rules of Professional Conduct, former Rule 3-110(A)
[Failure to Perform with Competence]

21. On or about December 8, 2014, Kymberly Wulfe employed respondent to perform legal services, namely to represent her in an underinsured motorist action against her insurance company, Farmers Insurance Exchange, stemming from an automobile accident, which respondent intentionally, recklessly, or repeatedly failed to perform with competence, in willful violation of Rules of Professional Conduct, former rule 3-110(A), by the following:

**Exhibit A_009**

A. Failing to respond to Form Interrogatories, Special Interrogatories and a
Demand for Production of Documents propounded by Famers Insurance
Exchange by on or about May 11, 2016; June 15, 2016, and May 22, 2017.

B. Failing to cooperate with opposing counsel in setting a date for Kymberly
Wulfe's deposition by on or about June 28, 2016.

## COUNT FIFTEEN

Case No. 17-O-06077
Business and Professions Code section 6068(m)
[Failure to Inform Client of Significant Developments]

22. Respondent failed to keep respondent's client, Kymberly Wulfe, reasonably informed
of significant developments in a matter in which respondent had agreed to provide legal services,
in willful violation of Business and Professions Code section 6068(m), by failing to inform the
client of the following:

A. Ms. Wulfe, was served, through respondent, with Form Interrogatories,
Special Interrogatories and a Demand for Production of Documents by
Farmers Insurance Exchange on or about March 28, 2016, May 11, 2016 and
March 21, 2017.

## COUNT SIXTEEN

Case No. 17-O-06077
Business and Professions Code section 6106
[Moral Turpitude - Misrepresentation]

23. On or about December 17, 2016, respondent stated in writing to Kymberly Wulfe, his
client, that no discovery requests were outstanding in her underinsured motorist claim against her
insurance company, and that there was no basis for any sanctions against Ms. Wulfe.  In fact,
respondent had been served with the discovery requests on or about March 28, 2016 and on or
about May 11, 2016,  and had never prepared responses to the discovery requests.  When he
made the statements that no discovery requests were outstanding in her underinsured motorist
claim against her insurance company, and that there was no basis for any sanctions against Ms.

-10-

**Exhibit A_010**

1   Wulfe, respondent knew the statements were false and misleading.  Respondent thereby

2   committed an act involving moral turpitude, dishonesty or corruption in willful violation of

3   Business and Professions Code section 6106.

4       24. A violation of section 6106 may result from intentional conduct or grossly negligent

5   conduct.  Respondent is charged with committing intentional misrepresentation.  However,

6   should the evidence at trial demonstrate that respondent committed misrepresentation as a result

7   of gross negligence, respondent must still be found culpable of violating section 6106 because

8   misrepresentation through gross negligence is a lesser included offense of intentional

9   misrepresentation.

10

11                            COUNT SEVENTEEN

12                          Case No.  17-O-06077
                      Business and Professions Code, section 6106
13                        [Moral Turpitude - Misrepresentation]

14      25. On or about December 15, 2015, respondent sent an email to Ms. Wulfe stating that

15   he was maintaining her settlement funds in his client trust account after respondent had already

16   failed to maintain her settlement funds in his client trust account as of on or about December 2,

17   2015. When respondent made the statement that he was maintaining her settlement funds in his

18   client trust account after he had already failed to maintain her settlement funds in his client trust

19   account, respondent knew the statement was false and misleading.  Respondent thereby

20   committed an act involving moral turpitude, dishonesty or corruption in willful violation of

21   Business and Professions Code section 6106.

22      26. A violation of section 6106 may result from intentional conduct or grossly negligent

23   conduct.  Respondent is charged with committing intentional misrepresentation.  However,

24   should the evidence at trial demonstrate that respondent committed misrepresentation as a result

25   of gross negligence, respondent must still be found culpable of violating section 6106 because

26   misrepresentation through gross negligence is a lesser included offense of intentional

27   misrepresentation.

28

-11-

Exhibit A_011

## COUNT EIGHTEEN

Case No. 17-O-06077
Rules of Professional Conduct, former Rule 4-100(B)(3)
[Failure to Render Accounts of Client Funds]

27. On or about November 23, 2015, respondent received on behalf of respondent's client, Kymberly Wulfe, a settlement check from 21st Century Insurance.  Respondent thereafter failed to render an appropriate accounting to the client regarding those funds following the termination of respondent's employment on or about August 20, 2017, in willful violation of the Rules of Professional Conduct, former rule 4-100(B)(3).

## COUNT NINETEEN

Case No. 17-O-06077
Business and Professions Code, section 6068(i)
[Failure to Cooperate in State Bar Investigation]

28. Respondent failed to cooperate and participate in a disciplinary investigation pending against respondent by failing to provide a substantive response to the State Bar's letters of December 7, 2017, February 7, 2018, August 28, 2018, and September 26, 2018, which respondent received, that requested respondent's response to the allegations of misconduct being investigated in State Bar Court case number 17-O-06077, in willful violation of Business and Professions Code section 6068(i).

## COUNT TWENTY

Case Nos. 17-O-03416, 17-O-05972, 17-O-06077
Rules of Professional Conduct, former Rule 4-100(A)
[Commingling Personal Funds in Client Trust Account]

29. Between on or about January 2, 2015, and on or about October 23, 2017, respondent deposited or commingled funds belonging to respondent into respondent's client trust account at U.S. Bank, account number *-***-****-5353, as follows in willful violation of the Rules of Professional Conduct, former rule 4-100(A):

-12-

Exhibit A_012

| | Date of Deposit | AMT. DEPOSITED | FORM OF DEPOSIT |
|---|---|---|---|
| 1 | | | |
| 2 | March 9, 2015 | $7,300.00 | Check |
| 3 | April 15, 2016 | $3,706.98 | Payroll check |
| 4 | April 29, 2016 | $3,706.98 | Payroll check |
| 5 | May 16, 2016 | $3,706.98 | Payroll check |
| 6 | June 2, 2016 | $3,706.98 | Payroll check |
| 7 | June 8, 2016 | $1,371.75 | Payroll check |
| 8 | June 16, 2016 | $3,706.98 | Payroll check |
| 9 | June 16, 2016 | $313.50 | Payroll check |
| 10 | July 1, 2016 | $3,706.98 | Payroll check |
| 11 | July 18, 2016 | $3,706.98 | Payroll check |
| 12 | July 22, 2016 | $45.72 | Payroll check |
| 13 | August 1, 2016 | $3,706.98 | Payroll check |
| 14 | August 4, 2016 | $731.60 | Payroll check |
| 15 | August 16, 2016 | $3,706.98 | Payroll check |
| 16 | September 6, 2016 | $3,706.98 | Payroll check |
| 17 | September 15, 2016 | $3,706.98 | Payroll check |
| 18 | October 3, 2016 | $3,706.98 | Payroll check |
| 19 | October 17, 2016 | $1,746.48 | Payroll check |
| 20 | October 18, 2016 | $3,706.98 | Payroll check |
| 21 | November 1, 2016 | $1,524.58 | Payroll check |
| 22 | November 1, 2016 | $3,706.98 | Payroll check |
| 23 | November 16, 2016 | $3,706.98 | Payroll check |
| 24 | December 1, 2016 | $3,706.98 | Payroll check |
| 25 | December 15, 2016 | $5,120.32 | Payroll check |
| 26 | December 20, 2016 | $296.40 | Payroll check |
| 27 | December 20, 2016 | $2,565.91 | Payroll check |
| 28 | | | |

**Exhibit A_013**

| 1  | December 29, 2016 | $200.00     | Check         |
|----|-------------------|-------------|---------------|
| 2  | January 3, 2017   | $3,706.98   | Payroll check |
| 3  | January 13, 2017  | $3,716.69   | Payroll check |
| 4  | February 1, 2017  | $3,721.69   | Payroll check |
| 5  | February 3, 2017  | $3,259.37   | Payroll check |
| 6  | February 16, 2017 | $3,721.69   | Payroll check |
| 7  | March 2, 2017     | $3,721.69   | Payroll check |
| 8  | March 16, 2017    | $3,721.69   | Payroll check |
| 9  | March 24, 2017    | $2,073.09   | Payroll check |
| 10 | April 3, 2017     | $3,721.69   | Payroll check |
| 11 | April 17, 2017    | $3,721.69   | Payroll check |
| 12 | April 25, 2017    | $1,121.66   | Payroll check |
| 13 | May 1, 2017       | $3,721.69   | Payroll check |
| 14 | May 8, 2017       | $868.78     | Payroll check |
| 15 | May 17, 2017      | $3,595.13   | Payroll check |
| 16 | June 2, 2017      | $2,367.57   | Payroll check |
| 17 | June 2, 2017      | $3,595.13   | Payroll check |
| 18 | July 10, 2017     | $1,813.09   | Payroll check |
| 19 | July 17, 2017     | $1,813.09   | Payroll check |
| 20 | July 24, 2017     | $1,189.85   | Payroll check |
| 21 | August 1, 2017    | $1,813.09   | Payroll check |
| 22 | August 7, 2017    | $1,813.09   | Payroll check |
| 23 | August 14, 2017   | $1,813.10   | Payroll check |
| 24 | August 18, 2017   | $1,813.08   | Payroll check |
| 25 | August 28, 2017   | $1,813.10   | Payroll check |
| 26 | September 1, 2017 | $1,471.08   | Payroll check |
| 27 |                   |             |               |
| 28 |                   |             |               |

**Exhibit A_014**

1

2
## COUNT TWENTY-ONE

3
Case Nos. 17-O-03416, 17-O-05972, 17-O-06077
Rules of Professional Conduct, former Rule 4-100(A)

4
[Commingling -- Payment of Personal Expenses from Client Trust Account]

5
30. Between on or about January 2, 2015 and October 23, 2017, respondent issued the

6
following checks (and electronic withdrawals) from funds in respondent's client trust account at

7
U.S. Bank, account no. account number *-***-****-5353, for the payment of personal and

8
business expenses, in willful violation of the Rules of Professional Conduct, former rule

9
4-100(A):

| CHECK | PAYEE | $AMT OF CHECK |
|-------|-------|---------------|
| Electronic Withdrawal | First Insurance | $327.67 |
| Electronic Withdrawal | Appldbnk Web | $2,295.93 |
| Electronic Withdrawal | Capital One | $3,316.31 |
| 808 | Premier Business Center | $979.62 |
| 805 | Fondazione Italia | $270.00 |
| Electronic Withdrawal | Capital One | $2,860.39 |
| 814 | Premier Business Center | $1,108.96 |
| Electronic Withdrawal | West Coast Life | $2,205.03 |
| Electronic Withdrawal | Applied Bank | $500.00 |
| Electronic Withdrawal | Appldbnk Web | $1,065.71 |
| Electronic Withdrawal | Capital One | $2,742.13 |
| Electronic Withdrawal | Capital One | $520.70 |
| Electronic Withdrawal | Appldbnk Web | $3,435.50 |
| 711 | Premier Business Center | $1,080.48 |
| Electronic Withdrawal | Capital One | $2,346.45 |
| Electronic Withdrawal | Capital One | $1,007.21 |
| Cashier's Check | John Marushin | $14,700.00 |

28

-15-

Exhibit A_015

| | | | |
|---|---|---|---|
| 1 | Electronic Withdrawal | Appldbnk Web | $500.00 |
| 2 | 722 | Premier Business Center | $1,411.10 |
| 3 | Cashier's Check | Christine Rhee | $5,000.00 |
| 4 | 723 | Premier Business Center | $1,166.24 |
| 5 | 724 | Osborne Lopez | $300.00 |
| 6 | Electronic Withdrawal | Capital One | $2,500.00 |
| 7 | Electronic Withdrawal | Appldbnk Web | $500.00 |
| 8 | 726 | Osborne Lopez | $300.00 |
| 9 | 729 | Osborne Lopez | $300.00 |
| 10 | 0000 | Osborne Lopez | $400.00 |
| 11 | 0000 | Premier Business Center | $1,045.26 |
| 12 | Electronic Withdrawal | Appldbnk Web | $1,000.00 |
| 13 | Electronic Withdrawal | Capital One | $2,000.00 |
| 14 | Cashier's Check | Brighter Days Montessori School | $1,731.25 |
| 15 | 851 | Osborne Lopez | $300.00 |
| 16 | Electronic Withdrawal | Capital One | $3,000.00 |
| 17 | Cashier's Check | John Marushin | $4,900.00 |
| 18 | Electronic Withdrawal | Capital One | $750.00 |
| 19 | 772 | Premier Business Center | $984.23 |
| 20 | Electronic Withdrawal | Appldbnk Web | $500.00 |
| 21 | Cashier's Check | John Marushin | $4,900.00 |
| 22 | Cashier's Check | Christine Rhee | $5,000.00 |
| 23 | Electronic Withdrawal | Capital One | $300.00 |
| 24 | Electronic Withdrawal | Appldbnk Web | $750.00 |
| 25 | Electronic Withdrawal | Capital One | $1,500.00 |
| 26 | 780 | Premier Business Center | $1,221.54 |
| 27 | Electronic Withdrawal | Capital One | $2,000.00 |
| 28 | | | |

**Exhibit A_016**

| 1 | Cashier's Check | Christine Rhee | $2,700.00 |
| 2 | Cashier's Check | John Marushin | $4,900.00 |
| 3 | Cashier's Check | Brighter Days Montessori School | $5,306.25 |
| 4 | Electronic Withdrawal | Capital One | $1,500.00 |
| 5 | 881 | Premier Business Center | $940.63 |
| 6 | Electronic Withdrawal | Appldbnk Web | $500.00 |
| 7 | Electronic Withdrawal | Capital One | $1,000.00 |
| 8 | Cashier's Check | John Marushin | $4,900.00 |
| 9 | Electronic Withdrawal | Capital One | $750.00 |
| 10 | 787 | Premier Business Center | $1,655.33 |
| 11 | Electronic Withdrawal | Capital One | $750.00 |
| 12 | 822 | Fondazione Italia | $299.00 |
| 13 | Cashier's Check | Christine Rhee | $10,000.00 |
| 14 | Cashier's Check | John Marushin | $4,900.00 |
| 15 | Electronic Withdrawal | Capital One | $1,000.00 |
| 16 | Electronic Withdrawal | Capital One | $750.00 |
| 17 | Electronic Withdrawal | Appldbnk Web | $250.00 |
| 18 | Electronic Withdrawal | Capital One | $500.00 |
| 19 | Electronic Withdrawal | Appldbnk Web | $350.00 |
| 20 | Electronic Withdrawal | Capital One | $500.00 |
| 21 | Cashier's Check | Christine Rhee | $1,000.00 |
| 22 | Cashier's Check | John Marushin | $4,900.00 |
| 23 | Electronic Withdrawal | Capital One | $500.00 |
| 24 | Electronic Withdrawal | Capital One | $1,000.00 |
| 25 | Electronic Withdrawal | West Coast Life | $2,852.49 |
| 26 | 824 | Nationwide Mutual | $170.77 |
| 27 | Electronic Withdrawal | Capital One | $1,000.00 |
| 28 | | | |

**Exhibit A_017**

| | | | |
|---|---|---|---|
| 1 | Electronic Withdrawal | West Publishing | $1,597.04 |
| 2 | Electronic Withdrawal | Capital One | $500.00 |
| 3 | Electronic Withdrawal | Capital One | $1,000.00 |
| 4 | Electronic Withdrawal | Capital One | $1,000.00 |
| 5 | Cashier's Check | John Marushin | $4,395.00 |
| 6 | Cashier's Check | Western Auto Body | $1,000.00 |
| 7 | Electronic Withdrawal | Capital One | $1,500.00 |
| 8 | Cashier's Check | Nationwide P&C | $169.90 |
| 9 | Cashier's Check | Brighter Days Montessori School | $4,593.75 |
| 10 | Electronic Withdrawal | Capital One | $1,500.00 |
| 11 | Electronic Withdrawal | Capital One | $2,000.00 |
| 12 | Electronic Withdrawal | Capital One | $2,500.00 |
| 13 | 914 | Fondazione Italia | $350.00 |
| 14 | Electronic Withdrawal | Capital One | $151.00 |
| 15 | Cashier's Check | John Marushin | $4,900.00 |
| 16 | Electronic Withdrawal | Capital One | $300.00 |
| 17 | Electronic Withdrawal | Capital One | $1,000.00 |
| 18 | Electronic Withdrawal | John Marushin | $4,625.00 |
| 19 | Electronic Withdrawal | Capital One | $200.00 |
| 20 | Cashier's Check | Christine Rhee | $1,000.00 |
| 21 | Electronic Withdrawal | Capital One | $750.00 |
| 22 | Electronic Withdrawal | Capital One | $300.00 |
| 23 | Electronic Withdrawal | Capital One | $300.00 |
| 24 | Electronic Withdrawal | Capital One | $300.00 |
| 25 | Electronic Withdrawal | Nationwide P&C | $202.36 |
| 26 | Electronic Withdrawal | West Coast Life | $2,293.11 |
| 27 | Electronic Withdrawal | Capital One | $250.00 |
| 28 | | | |

**Exhibit A_018**

| | | | |
|---|---|---|---|
| 1 | Cashier's Check | Brighter Days Montessori School | $731.50 |
| 2 | Cashier's Check | John Marushin | $4,900.00 |
| 3 | Electronic Withdrawal | Capital One | $7,435.86 |
| 4 | Cashier's Check | Finley's Tree Service | $1,600.00 |
| 5 | 886 | Brighter Days Montessori School | $658.35 |
| 6 | Cashier's Check | John Marushin | $4,900.00 |
| 7 | 834 | Natalie Mastroianni | $23,000.00 |
| 8 | Electronic Withdrawal | Capital One | $800.00 |
| 9 | Cashier's Check | Christine Rhee | $2,500.00 |
| 10 | Cashier's Check | John Marushin | $4,900.00 |
| 11 | Electronic Withdrawal | Capital One | $800.00 |
| 12 | Cashier's Check | Brighter Days Montessori School | $1,850.00 |
| 13 | Cashier's Check | Christine Rhee | $1,500.00 |
| 14 | Electronic Withdrawal | Capital One | $500.00 |
| 15 | Electronic Withdrawal | Capital One | $300.00 |
| 16 | Electronic Withdrawal | Capital One | $750.00 |
| 17 | Electronic Withdrawal | Capital One | $600.00 |
| 18 | Electronic Withdrawal | Capital One | $500.00 |
| 19 | 913 | Fondazione Italia | $330.00 |
| 20 | 835 | Samuel Mastroianni | $663.00 |
| 21 | Electronic Withdrawal | Capital One | $500.00 |
| 22 | Electronic Withdrawal | Capital One | $750.00 |
| 23 | Cashier's Check | Christine Rhee | $2,000.00 |
| 24 | Cashier's Check | Brighter Days Montessori School | $1,200.00 |
| 25 | Cashier's Check | John Marushin | $4,900.00 |
| 26 | Electronic Withdrawal | Capital One | $750.00 |
| 27 | Electronic Withdrawal | Capital One | $300.00 |
| 28 | | | |

**Exhibit A_019**

| | | | |
|---|---|---|---|
| 1 | Electronic Withdrawal | Capital One | $250.00 |
| 2 | Electronic Withdrawal | Capital One | $100.00 |
| 3 | Electronic Withdrawal | Capital One | $250.00 |
| 4 | Electronic Withdrawal | United Fin Cas | $190.68 |
| 5 | Cashier's Check | Brighter Days Montessori School | $1,100.00 |
| 6 | Cashier's Check | John Marushin | $4,900.00 |
| 7 | Electronic Withdrawal | Capital One | $500.00 |
| 8 | Electronic Withdrawal | Capital One | $500.00 |
| 9 | Electronic Withdrawal | West Coast Life | $2,293.11 |
| 10 | Electronic Withdrawal | Capital One | $500.00 |
| 11 | Cashier's Check | Christine Rhee | $1,000.00 |
| 12 | Cashier's Check | John Marushin | $4,900.00 |
| 13 | Electronic Withdrawal | United Fin Cas | $200.64 |
| 14 | Electronic Withdrawal | Capital One | $500.00 |
| 15 | Cashier's Check | Brighter Days Montessori School | $1,200.00 |
| 16 | Electronic Withdrawal | Capital One | $500.00 |
| 17 | Electronic Withdrawal | Capital One | $700.00 |
| 18 | Electronic Withdrawal | Capital One | $600.00 |
| 19 | Electronic Withdrawal | Capital One | $300.00 |
| 20 | Cashier's Check | John Marushin | $4,900.00 |
| 21 | Cashier's Check | Sarkis Babachania | $4,000.00 |
| 22 | Cashier's Check | Sarkis Babachania | $4,000.00 |
| 23 | Cashier's Check | Sarkis Babachania | $4,000.00 |
| 24 | Cashier's Check | Brighter Days Montessori School | $1,000.00 |
| 25 | Cashier's Check | John Marushin | $4,700.00 |
| 26 | Electronic Withdrawal | Capital One | $3,000.00 |
| 27 | Cashier's Check | Brighter Days Montessori School | $2,000.00 |
| 28 | | | |

**Exhibit A_020**

| | | | |
|---|---|---|---|
| 1 | Electronic Withdrawal | Capital One | $3,000.00 |
| 2 | 919 | Brighter Days Montessori School | $40.00 |
| 3 | Cashier's Check | Christine Rhee | $2,000.00 |
| 4 | Cashier's Check | John Marushin | $4,900.00 |
| 5 | Electronic Withdrawal | Capital One | $2,000.00 |
| 6 | Cashier's Check | Natalie Mastroianni | $300.00 |
| 7 | Electronic Withdrawal | Capital One | $500.00 |
| 8 | Cashier's Check | Brighter Days Montessori School | $800.00 |
| 9 | 920 | Rolling Hills County Day School | $3,460 |
| 10 | Electronic Withdrawal | United Fin Cas | $1,151.87 |
| 11 | Electronic Withdrawal | Capital One | $750.00 |
| 12 | Electronic Withdrawal | Capital One | $500.00 |
| 13 | Cashier's Check | Hide Sushi | $45.00 |
| 14 | Cashier's Check | John Marushin | $4,900.00 |
| 15 | Electronic Withdrawal | Capital One | $500.00 |
| 16 | Electronic Withdrawal | Capital One | $1,000.00 |
| 17 | Cashier's Check | Brighter Days Montessori School | $800.00 |
| 18 | Electronic Withdrawal | Capital One | $1,500.00 |
| 19 | Electronic Withdrawal | Capital One | $1,000.00 |
| 20 | Electronic Withdrawal | Capital One | $1,500.00 |
| 21 | Cashier's Check | John Marushin | $4,900.00 |
| 22 | Electronic Withdrawal | Capital One | $350.00 |
| 23 | Electronic Withdrawal | Capital One | $500.00 |
| 24 | Cashier's Check | John Marushin | $4,900.00 |
| 25 | Electronic Withdrawal | Capital One | $550.00 |
| 26 | Electronic Withdrawal | West Coast Life | $2,293.11 |
| 27 | 836 | Brighter Days Montessori School | $693.99 |
| 28 | | | |

**Exhibit A_021**

| | | | |
|---|---|---|---|
| 1 | Electronic Withdrawal | Capital One | $550.00 |
| 2 | Electronic Withdrawal | Capital One | $300.00 |
| 3 | Electronic Withdrawal | Capital One | $200.00 |
| 4 | Cashier's Check | John Marushin | $4,900.00 |
| 5 | Electronic Withdrawal | Capital One | $202.00 |
| 6 | Electronic Withdrawal | Capital One | $150.00 |
| 7 | Electronic Withdrawal | Capital One | $150.00 |
| 8 | Electronic Withdrawal | Capital One | $221.00 |
| 9 | Cashier's Check | John Marushin | $4,535.00 |

## NOTICE - INACTIVE ENROLLMENT!

YOU ARE HEREBY FURTHER NOTIFIED THAT IF THE STATE BAR COURT FINDS, PURSUANT TO BUSINESS AND PROFESSIONS CODE SECTION 6007(c), THAT YOUR CONDUCT POSES A SUBSTANTIAL THREAT OF HARM TO THE INTERESTS OF YOUR CLIENTS OR TO THE PUBLIC, YOU MAY BE INVOLUNTARILY ENROLLED AS AN INACTIVE MEMBER OF THE STATE BAR. YOUR INACTIVE ENROLLMENT WOULD BE IN ADDITION TO ANY DISCIPLINE RECOMMENDED BY THE COURT.

///
///
///
///
///
///
///
///
///
///
///

**Exhibit A_022**

1

## NOTICE - COST ASSESSMENT!

2

IN THE EVENT THESE PROCEDURES RESULT IN PUBLIC
DISCIPLINE, YOU MAY BE SUBJECT TO THE PAYMENT OF COSTS
INCURRED BY THE STATE BAR IN THE INVESTIGATION, HEARING
AND REVIEW OF THIS MATTER PURSUANT TO BUSINESS AND
PROFESSIONS CODE SECTION 6086.10.

3

4

5

Respectfully submitted,

6

THE STATE BAR OF CALIFORNIA
OFFICE OF CHIEF TRIAL COUNSEL

7

8

9    DATED: December 26, 2018          By: _____
                                        Christina Mitchell
10                                      Deputy Trial Counsel

11

12

13    DATED: December 26, 2018          By: _____
                                        Eli Morgenstern
14                                      Senior Trial Counsel

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-23-

**Exhibit A_023**

# DECLARATION OF SERVICE
by
U.S. FIRST-CLASS MAIL / U.S. CERTIFIED MAIL / OVERNIGHT DELIVERY / FACSIMILE–ELECTRONIC TRANSMISSION

CASE NUMBER(s): **17-O-03416, 17-O-05972, 17-O-06077**

I, the undersigned, am over the age of eighteen (18) years and not a party to the within action, whose business address and place of employment is the State Bar of California, 845 South Figueroa Street, Los Angeles, California 90017-2515, declare that:

- on the date shown below, I caused to be served a true copy of the within document described as follows:

## NOTICE OF DISCIPLINARY CHARGES

☐ **By U.S. First-Class Mail: (CCP §§ 1013 and 1013(a))**
- in accordance with the practice of the State Bar of California for collection and processing of mail, I deposited or placed for collection and mailing in the City and County of Los Angeles.

☒ **By U.S. Certified Mail: (CCP §§ 1013 and 1013(a))**

☐ **By Overnight Delivery: (CCP §§ 1013(c) and 1013(d))**
- I am readily familiar with the State Bar of California's practice for collection and processing of correspondence for overnight delivery by the United Parcel Service ('UPS').

☐ **By Fax Transmission: (CCP §§ 1013(e) and 1013(f))**
Based on agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed herein below. No error was reported by the fax machine that I used. The original record of the fax transmission is retained on file and available upon request.

☐ **By Electronic Service: (CCP § 1010.6)**
Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the person(s) at the electronic addresses listed herein below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ *(for U.S. First-Class Mail)* in a sealed envelope placed for collection and mailing at Los Angeles, addressed to: *(see below)*

☒ *(for Certified Mail)* in a sealed envelope placed for collection and mailing as certified mail, return receipt requested,
Article No.:  9414-7266-9904-2111-0161-04    at Los Angeles, addressed to: *(see below)*

☐ *(for Overnight Delivery)* together with a copy of this declaration, in an envelope, or package designated by UPS,
Tracking No.:    addressed to: *(see below)*

| Person Served | Business-Residential Address | Fax Number | Courtesy Copy To: |
|---|---|---|---|
| **Ellen Anne Pansky**<br>**Pansky Markle, Attorneys at Law** | **1010 Sycamore Ave., Unit 308**<br>**South Pasadena, CA 91030-6139** | Electronic Address | |

I am readily familiar with the State Bar of California's practice for collection and processing of correspondence for mailing with the United States Postal Service, and overnight delivery by the United Parcel Service ('UPS'). In the ordinary course of the State Bar of California's practice, correspondence collected and processed by the State Bar of California would be deposited with the United States Postal Service that same day, and for overnight delivery, deposited with delivery fees paid or provided for, with UPS that same day.

I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date on the envelope or package is more than one day after date of deposit for mailing contained in the affidavit.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed at Los Angeles, California, on the date shown below.

DATED:  December 26, 2018

SIGNED: _Kathi Palacios_
Kathi Palacios
Declarant

State Bar of California
DECLARATION OF SERVICE

**Exhibit A_024**

**Payments by Koi to Marron Lawyers (Marron 4-Year Transfers)**

| Date | Payee | Chk | Amount | Clear Date | Purpose |
|------|-------|-----|--------|------------|---------|
| 4/15/2016 | Marron Lawyers | 205540 | $10,000.00 | 4/19/2016 | Initial Retainer |
| 10/18/2016 | Marron Lawyers | 206095 | $4,560.00 | 10/24/2016 | Inv. 32171, 32325, 32383 |
| 11/15/2016 | Marron Lawyers | 206201 | $1,040.00 | 11/17/2016 | Inv. 32411 |
| 12/20/2016 | Marron Lawyers | 206304 | $10,811.30 | 12/22/2016 | Inv. 32484 |
| 2/21/2017 | Marron Lawyers | 206484 | $4,286.48 | 2/24/2017 | Inv. 32613 |
| 3/21/2017 | Marron Lawyers | 206564 | $6,746.00 | 3/24/2017 | Inv. 32751 |
| 6/13/2017 | Marron Lawyers | 206806 | $3,381.54 | 6/21/2017 | Inv. 32834, 32833, 32981, 32982, 32983 |
| 7/5/2017 | Marron Lawyers | 206872 | $661.62 | 7/10/2017 | Inv. 33064 |
| | TOTAL PAID | | $41,486.94 | | |

**Exhibit B_001**

**Payments by Koi to Marron Lawyers (Marron 4-Year Transfers)**

| Date | Payee | Chk | Amount | Clear Date | Purpose |
|------|-------|-----|--------|------------|---------|
| 2/21/2017 | Marron Lawyers | 206484 | $4,286.48 | 2/24/2017 | Inv. 32613 |
| 3/21/2017 | Marron Lawyers | 206564 | $6,746.00 | 3/24/2017 | Inv. 32751 |
| 6/13/2017 | Marron Lawyers | 206806 | $3,381.54 | 6/21/2017 | Inv. 32834, 32833, 32981, 32982, 32983 |
| 7/5/2017 | Marron Lawyers | 206872 | $661.62 | 7/10/2017 | Inv. 33064 |
| | TOTAL PAID | | $15,075.64 | | |

**Exhibit C_001**

**Payments by Koi to The Bloom Firm**

| Date | Payee | Chk | Amount | Clear Date | Purpose |
|---|---|---|---|---|---|
| 7/25/2017 | The Bloom Firm | 206944 | $25,000.00 | 7/31/2017 | Initial Retainer |
| 1/11/2018 | The Bloom Firm | 207375 | $25,000.00 | 1/18/2018 | Second Retainer |
|  | | Total | $50,000.00 | | |

**Exhibit D_001**